## L. R. AND F. S. RAILWAY CO. v. TROTTER.

1. NEGLIGENCE: *Duty of engineer on discovery of stock on railroad track.* It is not always necessary that the engineer on a railroad train should stop it, or slacken its speed, on discovering stock on the track. Ordinary prudence requires him to promptly endeavor to drive them off by sounding the whistle, but does not require him to stop, or slacken the speed of the train, when he may reasonably believe that they will leave the track in time, and there is no cause or reason to suppose there is any risk or danger.

2. INSTRUCTIONS: *Abstract, not to be given.*

An instruction which is calculated to mislead the jury by leading them to infer that the evidence tends to establish the fact it hypothetically states, though abstractly correct, should not be given.

APPEAL from *Franklin* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

STATEMENT.

Trotter recovered judgment against the Little Rock and Fort Smith Railway Company before a Justice of the Peace, for an injury to his horse, and the Company appealed to the Circuit Court, where the case was tried *de novo* on the following evidence:

The plaintiff and two other witnesses were present at the time of the injury, a short distance from the horse. This horse and another were on the side of the road next to the river, and the road ran between the place where the horses were and the stable and house. The horses were in the field of plaintiff, five miles west of Ozark, and were quietly feeding on the grass at the time the train going east, came in sight, around a curve in the road, and while thus grazing—between forty feet, as stated by one witness, and forty or fifty yards, as stated by another, and sixty yards by another, from the road, and while the horses were not going towards the road, the whistle of the engine commenced blowing; which frightened the horses, and they attempted to cross the road by a farm-road which crosses the track, to get to the house, but the train cut them off from that way of escape, and they then started down the track, the engineer blowing his whistle all the while, and so continued until the horses were run into a culvert, where plaintiff's horse was badly injured. The witnesses could see the train, and could notice no slackening of the speed from the time the engine

whistled, up to the time the horses went into the culvert. If the engineer made any attempt to check before that time, it was not visible to them, although he might have done so. The horse was worth seventy-five dollars, and he was damaged fifty dollars; and, because of the injury, the plaintiff was deprived of the use of the horse on his farm for five or six months. He had not worked him in harness afterwards. Neither the engine nor cars of defendant struck the horse, but the injury was sustained by reason of his fall through the culvert. The train came to a full stop about thirty feet before it reached the culvert.

Andrew Southard, witness for the defendant, was the engineer on the passenger train going east at the time of the injury, about the twentieth of March, 1878. He was running on regular schedule time, and, as he turned the curve at plaintiff's farm, he discovered three horses, apparently near, and going towards, the track. He immediately sounded the stock-alarm whistle; the horses made no halt, but ran upon, and down, and along, the track ahead of the train. He continued to sound the alarm whistle. When the horses struck the track he immediately called for brakes, reversed his engine, and stopped the train as soon as possible. The horses came to a culvert; one jumped over it, and the other two fell in, scrambled out and ran off. He saw them for some time after they got out. The engine had come to a full stop, twenty yards before reaching the culvert. After the horses got out, he went on. No part of the train struck the animal. He did not know whose stock it was, nor who lived there, and he did not think the horses were injured, by the way they ran off. He had no desire or intention of hurting the horses, and did all he could to avoid it. He blew the whistle for no other purpose than to frighten them away.

Upon cross-examination, he stated that at the speed he

was then running he could bring his engine and train to a full stop within one hundred yards; that when the horses first got upon the track they were seventy-five or one hundred yards ahead of the engine, and that they ran upon the track one hundred and fifty or two hundred yards, and that his engine was twenty yards behind them when they reached the culvert.

Among others, the court gave to the jury the following instructions, against the appellant's objections:

5. "If the jury believe from the evidence that, after the horse got upon the track of the defendant, the engineer did not put on breaks, and stop the engine in a reasonable and possible distance, but willfully ran the horse down and caused him to fall into the culvert, they will find for the plaintiff.

6. "The court charges the jury that it is not necessary to sustain this action, for the plaintiff to prove that the engine or cars of the defendant actually struck the horse before he was injured; but if they believe from the evidence that there was no occasion for the engineer to have blown his whistle at the beginning, or that he did not slacken up speed, and did not use due care and diligence to avoid the injury before the horse ran into the culvert, they will find for the plaintiff."

Verdict for the plaintiff. Motion for new trial overruled. Bill of exceptions filed, and appeal by defendant to this court.

*Clark & Williams*, for appellant:

There was no evidence of negligence. All that law or reason required was, that when the stock was seen the engineer should slow down in time not to come into collision with it; this was done. Evidence upon the question whether the train might not have been stopped sooner, was wholly

immaterial. The instructions were based on evidence wholly immaterial. Cites *Indianapolis R. Co.* v. *McBrown*, 46 *Ind.*, 229. The jury found, and the court authorized them to find, on wholly immaterial evidence, when he should have directed them to find for defendant, for want of evidence.

*L. L. Wittich*, for appellee:

Appellant guilty of negligence. 1. Because there was no necessity of sounding alarm at the beginning, as the horses were in no danger of being run over, and would not have run on the track had he not sounded the whistle.

2. Because he did not use due diligence in checking train, but on the contrary, constantly sounded his alarm, and did not decrease his speed until injury was done.

Cites *Acts February* 23, 1875, *p.* 133; *Acts* 1874–5.

HARRISON, J. There was no evidence tending to prove that the train was not stopped in a reasonable time after the horses ran upon the track, or that the engineer wilfully ran the horse down, as was assumed in the fifth instruction given for the plaintiff.

The great public interests subserved by railroads require and demand dispatch in their business, and that trains be run on time, and prompt and punctual connections made; and to stop or delay a train unnecessarily, would be to fail in the company's duty to the public.

It cannot for a moment be supposed that a train should always be stopped, or its speed slackened, so soon as stock are discovered to be upon the track.

Ordinary prudence and caution require the engineer to promptly endeavor, by blowing the whistle, to drive them off, but do not require that the train should be stopped, or

its speed slackened, where he may reasonably believe that they will leave the track in time, and there is no cause or reason to suppose there is any risk or danger. 1 *Thomp. on Neg.*, 505, 507; *Hot Springs Railroad Company v. Newman*, 36 *Ark.*, 607; *Cen. Ohio R. R. Co v. Lawrence*, 13 *Ohio St.*, 66; *Chicago & Miss. R. R. Co.* v. *Patchin*, 16 *Ill.*, 198; *T. W. & W. Ry. Co.* v. *Barlow*, 71 *Ill.*, 640; *Brother* v. *Railroad Co.*, 5 *Rich.*, 55.

Had such facts been shown as that the track, between where the horses got on it and the culvert, runs on an embankment, or through a cut, from which it might have appeared they could not safely or easily, or would not likely have left the track, the evidence in connection therewith would have tended to prove negligence in the engineer; but alone and without such proof there was nothing to show that the conduct of the engineer was not consistent with the exercise of due and proper care.

Though abstract, the instruction was calculated to mislead the jury, by leading them to infer that the evidence tended to establish the facts it hypothetically stated, and should not have given.

It was, as stated in the sixth instruction, to sustain the action, not necessary to prove that the engine or cars actually struck the horse; but this instruction, for the same reason as the other, was also abstract and misleading.

The verdict was, we think, not only without evidence to warrant it, but clearly and manifestly against the evidence.

The judgment is reversed, and the cause remanded.