WM. D. WARREN, Respondent, v. THE CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 19, 1894.

1. **Railroads:** KILLING STOCK: NEGLIGENCE. The mere fact that
horses are killed on a railroad track where there is a lawful fence,
raises no presumption of negligence, nor can negligence be inferred;
and the plaintiff has the burden to prove the actual negligence com-
plained of.

2. ——: ——: ——. After the discovery of stock on a railroad
track lawfully fenced, if checking the speed and stopping the train
will avoid injury to such stock and either can be done with safety,
negligence is chargeable if it is omitted.

3. ——: ——: STATUTE. After the track is lawfully fenced,
the statute makes the corporation liable only for negligence and
willfulness.

4. ——: STOCK ON TRACK: ENGINEER'S DUTY. In performing its
duty to the public for promptness and punctuality, a train should not
always be stopped, or its speed slackened as soon as stock are dis-
covered on the track. Ordinary prudence and caution require the
engineer to properly endeavor to frighten them off and he need not
stop or slacken speed when he may reasonably believe they will leave
the track and that there is no cause to suppose danger.

5. ——: KILLING STOCK: NEGLIGENCE. The evidence in this case is
reviewed and found insufficient to show that the killing was negli-
gently or willfully done and *held* insufficient to support a recovery by
plaintiff.

*Appeal from the Grundy Circuit Court.*—HON. PARIS
C. STEPP, Judge.

REVERSED.

*George Hall* for appellant.

(1) There was no sufficient evidence tending to
show negligence on the part of appellant's employees
to entitle respondent to recover in this case, and the

trial court should have given appellant's demurrer to the evidence both at the close of respondent's evidence and at the close of the evidence.   When the engineer first saw the object on the track he thought it was a man, and had the right to assume that he would get out of the way. *Deans v. Railroad* (107 N. C. 686), 22 Am. St. Rep. 902.   And if engineer Parish reasonably believed that blowing the whistle and ringing the bell would frighten the horses off of the track, and did not check the speed or reverse the engine for that reason, until he got so close that it was impossible to stop or prevent the injury, he was not guilty of negligence. *Railroad v. Trotter*, 37 Ark. 533, 49 Am. Dec. 239; *Railroad Co. v. Newman*, 36 Ark. 607; *Darling v. Railroad*, 121 Mass. 121; *Lock v. Railroad*, 15 Minn. 356; *Gonate v. Railroad*, 13 Am. and Eng. R. R. Cases, 519; *Railroad v. Marriatt*, 19 Am. and Eng. R. R. Cases, 509.

*Hugh C. Smith* with *Harber & Knight* for respondent.

The third objection raised by appellant that horses know the danger of approaching trains and how to avoid collision by stepping off as persons do, and to which objection is appended a number of authorities that an engineer has a right to act on the presumption that persons will step off, however true it might be in some instances, is as yet, a stride in natural history that we can not consent to, *i. e.*, the classification of the two as one specie.   The law on this branch of the case is fully covered by the case of *Senate v.* this same defendant, 41 Mo. App. 295—and cases therein cited. And the further doctrine sought to be established in said third point that the engineer's reasonable beliefs would or would not establish negligence or even tend

to prove or disprove it, is equally monstrous—as it is what he does and not what he believes that furnishes the guide.

SMITH, P. J.—This is an action to recover damages for killing, by defendant, of three of plaintiff's horses. There was a trial in the circuit court resulting in judgment for plaintiff from which defendant has appealed.

The evidence shows that the plaintiff's horses escaped from his pasture into that of a neighbor, from whence they strayed through a gate in the railroad fence upon the defendant's right of way. The railroad track at that place was inclosed with fences and gates therein as required by the statute. It is not claimed that the stock strayed on the railroad in consequence of any negligence of defendant. The plaintiff's horses were struck and killed by defendant's freight train going north. There was a cut and curve in the road about a half a mile south of the place where the horses were struck. From the cut, defendant's servants operating its trains going north could have an unobstructed view of the track from there to where the plaintiff's horses were struck.

The engineer testified that as soon as he passed through the cut he saw an object ahead of him on the track and that he thought it to be a man, but when he approched within four hundred feet of it, he then discovered it to be a gray horse with stern toward the approaching train; that as soon as he made this discovery he called for brakes, sounded the alarm whistle and reversed the engine; that the train was running twenty miles an hour and when it struck plaintiff's horses its speed had been reduced to fifteen miles an hour; that from the cut to where plaintiff's horses

were struck the grade was a descending one. The engineer further testified that he did all he could to stop the train and avert the accident. There was other testimony adduced by both plaintiff and defendant showing that the whistle was sounded as soon as the train came out of the cut and that it was blown a number of times before the point of accident was reached. The testimony was concurrent that if the engineer, as soon as the train emerged from the cut, had called for brakes and reversed his engine that the train could have likely been stopped before or by the time it reached the point where the accident happened, but that after the train had approached within four hundred feet of that point, it was impossible to stop it in time to avoid the collision. The question now is whether under this state of facts the plaintiff was entitled to recover.

The mere fact that the horses were killed on the defendant's track at a place where there was a lawful fence raises no presumption of negligence nor can negligence be inferred therefrom. *Weir v. Railroad*, 48 Mo. 558; *Calvert v. Railroad*, 34 Mo. 242; *Wallace v. Railroad*, 74 Mo. 594. In cases like the present one, where the injury occurs at a place where a railroad maintains a statutory fence, in order to entitle the plaintiff to recover, it devolves upon him to prove that the actual negligence of the railroad company caused the injury complained of. *Wallace v. Railroad, supra; Lloyd v. Railroad*, 49 Mo. 199; *Swearingen v. Railroad*, 64 Mo. 73.

When stock is discovered on a railroad track at a place like that shown in this case, and checking the speed of the train or stopping it would avoid the injury to such stock, and either could be done with safety to property and persons on board, the company is chargable with negligence if it omits to do so. *Pryor v.*

*Railroad*, 69 Mo. 215; *Wallace v. Railroad, supra.* Section 2611, Revised Statutes, provides, that after the fences, gates, farm crossing and cattle guards, therein required, shall be duly made and maintained "said corporation shall not be liable for any such damage unless negligently and willfully done."

The public interest requires that railroads shall be run on time and prompt and punctual connections made. This is a duty they owe the public. A train should not always be stopped or its speed slackened so soon as stock are discovered upon its track. Ordinary prudence and caution require the engineer to promptly endeavor by blowing the whistle to frighten them off, but do not require that the train should be stopped or its speed slackened when he may reasonably believe that they will leave the track and there is no cause or reason to suppose there is any risk or danger. 1 Thompson on Negligence, 506, cases cited in note 9; *Railroad v. Trotter*, 37 Ark. 593; *Railroad v. Barlow*, 71 Ill. 640; *Darling v. Railroad*, 121 Mass. 118. If the stock is in a cut or on an embankment, or for other reasons it is apparent that it can not escape from its peril by leaving the track, this would tend to prove negligence in the servants of the railroad company operating the train.

In this case the evidence shows the ground was level where plaintiff's horses were seen and that there was nothing to prevent them from getting off the track. If, when the engineer first discovered the plaintiff's horses, he had called for brakes and reversed his engine it is probable the injury would not have occurred; but did the defendant owe the plaintiff that duty then? We think not. The engineer did not know that the object which he saw was the plaintiff's horses. He thought it was a man and it will not be supposed for a moment that every time an engineer discovers a man on the

track a half a mile away he must use every effort to then stop the train. He has a right to assume that a man with eyes and ears endowed with common reason will either see or hear the train as it approaches and will take the precaution for his own self preservation to leave the track before it overtakes him. Ordinary care and prudence did not require the engineer to sound the whistle before the train approached within four hundred feet of the man, if such it had turned out to be. This was a sufficient warning to get out of the way of the train.

The first time that the engineer discovered that the object on the track ahead of him was not a man but a horse, he then employed every available means within his power to avert a collision. He endeavored to frighten him by the use of the stock alarm and to slow up the train as much as possible by the use of the brakes and reversing the engine so that he might get off the track. Not only this, but the plaintiff's own evidence conclusively shows that the engineer commenced blowing the whistle as soon as the engine was out of the cut and continued to do so until he discovered that the object was not a man but a horse, and that he would not be frightened off the track by blowing the whistle he then called for down brakes and reversed his engine.

If when the engine came out of the cut he could then have seen the distant object ahead of him on the track was a horse, he was only required, as he did, to sound the stock alarm, for he had a right to assume that the effect of that would be to frighten him off the track, but seeing this was ineffectual he used every other means in his power to arrest the speed of the train. So that we can not conclude that the engineer, as soon as he discovered the peril of the plaintiff's horse, did not use every precaution possible to avert the disaster. There is no proof that the act of

killing plaintiff's horse or horses was negligently or willfully done.

It results that defendant's instruction in the nature of a demurrer to the evidence should have been sustained. In this view of the case the other points discussed in briefs of counsel need not be noticed.

The judgment accordingly will be reversed. All concur.