ARKANSAS & LOUISIANA RAILWAY COMPANY *v*. SANDERS.

Opinion delivered November 9, 1901.

1. STOCK KILLING—OBSTRUCTION ON TRACK.—An instruction, in an action for a horse killed by a train, "that, if there was any hindrance or impediment in the way of the horse getting off or across the track at the point from whence he was standing, and the persons in charge of the train might have seen it by ordinary diligence, and they did not stop the train to avoid the injury," the jury should find for the plaintiff, is erroneous, as implying that a railroad company is under obligation to keep its right of way cleared of obstacles, so that animals can pass over and across its track freely. (Page 622.)

2. SAME—DUTY TO STOP TRAIN.—An instruction that if the trainmen saw that the horse in his fright would attempt to cross the track, and failed to stop the train to prevent the injury, if it could be done, the railroad company is liable, is erroneous, as it was not necessary to stop the train if the trainmen reasonably believed that the horse would leave the track in time to avoid injury. (Page 622.)

Appeal from Howard Circuit Court.

WILL P. FEAZEL, Judge.

*Dodge & Johnson* and *W .C. Rodgers,* for appellant.

The court erred in giving the second instruction asked by plaintiff. 48 Ark. 366. It was also error for the court to declare it to be the duty of all persons running trains to keep a constant lookout. 62 Ark. 182; 65 Ark. 619. The court should have given the third instruction prayed by appellant, to the effect that persons in charge of a train are not required to keep a lookout "for stock on the right of way or elsewhere, not on the track." 48 Ark. 366; 69 Minn. 90; 6 S. Dak. 100; 52 Ark. 162; 81 Ill. App. 616; 50 S. W. 1036.

*D. B. Sain,* for appellee.

There being evidence to sustain the verdict, the judgment will not be reversed merely upon the facts. 51 Ark. 467; 46 Ark. 142; 56 Ark. 314; 47 Ark. 467; 49 Ark. 122. The *prima facie* case of negligence, under the statute, was not overcome. 56 S. W. 270. The fourth instruction given for appellee was correct. 65 Ark. 624.

BUNN, C. J. This is a suit, originally before W. P. Craig, one of the justices of the peace of Howard county, by R. J. Sanders, the appellee, against the appellant company for $60 damages for

wounding and crippling a horse so as to necessitate its killing. Trial and judgment for the sum claimed by plaintiff, from which judgment the defendant appealed to the circuit court of said county.

In the circuit court on the 15th day of February, 1900, the cause was tried by a jury under the instructions of the court, and the verdict was for the same amount as in the justice's court, in favor of the plaintiff, and the defendant appealed to this court.

It appears from the evidence that on November 4, 1899, the plaintiff's horse was struck by defendant's train at point on the track about 166 yards southeast of where the railroad cuts through a small hill or mound, about twenty feet deep. There was nothing to obstruct the view of the engineer and fireman after turning the curve to where the horse was struck, a distance of 156 yards. From the horse's track, he was standing on the railroad right of way, on the north side of the railroad and about thirty feet from the track, and twenty feet from a wire and plank fence to the northward, and thence the horse seemed to have gone "angling," as the witness expressed it, towards the railroad, and reached the track about seventy-five feet from its starting point, and was struck by the engine. It seemed to be running before it reached the track, and in the direction the train was running. This is the testimony of the plaintiff, who was not present, and did not see the occurrence. He further testified that he was about a quarter of a mile away, and that the defendant did not ring a bell or sound a whistle on approaching the horse; that it was worth $60 to him; that he had assessed it for taxation at $20, and that it was over twelve years old. The evidence on the part of the plaintiff also showed that there was no obstruction on the north side of the track—the left side as the train was going—to prevent the trainmen from seeing the horse standing where it was said and appeared to have been when the train came through the cut. None of the plaintiff's witnesses saw the accident, and all testified from an examination of the locality.

On the part of defendant, the evidence shows that the train was made up of the engine and tender and four freight and two passenger cars, and carried passengers, freight and express, and was running on schedule time, at the rate of twenty-five miles per hour, and could not have been stopped within 250 yards, at that place in the road, although on a perfectly level track it could have been stopped within 150 yards. The fireman testified as fol-

lows: "We left Nashville that afternoon on time, and were running about twenty-five miles an hour, and when about a mile from Nashville, as we rounded a curve where the road goes round a small hill, I saw a horse to the left about thirty-five or forty feet from the track. He began running in an angling direction towards the track just as I saw him. I was and had been keeping a constant lookout for persons and property on the track, and saw this horse as soon as he was visible from my position on the engine, which was on the left side of the cab. The road makes a curve around this elevation, which is about twenty feet high, and it obstructs the view on the left side. Just as soon as I saw the horse I signalled the engineer to hold up, stating, 'Here is a horse over here.' He at once applied the air, shut off the steam, and proceeded to bring the train to a stop. But before the train stopped, the horse attempted to cross the track right in front of the engine, and was struck, three of his legs being broken. He was nearly half way across when hit, and the force of the train carried him two or three rail lengths, and dumped him over on the side from which he attempted to cross. It was about 100 yards from where the horse was first seen to the place of collision. He did not get upon the track until the train was right on him. We had very little time in which to do anything. We did not ring the bell or sound the whistle. My experience shows that it is more dangerous to frighten stock which is not upon the track by these methods than to omit such signals. The horse was on the right of way when I saw him. There is a plank and wire fence on north side of track about fifty feet distant."

The engineer's testimony is to the same effect, and further that on that part of the track he could stop such a train, composed and loaded as that one was, in about 250 yards, but that on a perfectly level track he could stop it in about 150 yards. He was on the opposite side of the cab, and acted mainly on the information given him by the fireman, as he was on the side next the horse, and could see the better, and the engineer did not see the horse because he could not from his station. He corroborates the fireman in other particulars.

Except as to the distance between the point where the train emerged from the cut and the trainmen could see down the straight track to where the horse was struck, there is no material difference in the testimony of witnesses. Where the horse was struck, the speed of the train had been reduced about half. The value of

the horse was shown to be $35 by the evidence of W. L. Wiggins, a farmer living in the vicinity, who was one of the appraisers.

The court, at the instance of the plaintiff, gave the second instruction as follows, to-wit:

"The court instructs the jury that if there was any hindrance or impediment in the way of the horse getting off or across the track at the point from whence he was standing, and the persons in charge of the train might have seen it by ordinary diligence, and they did not stop the train to avoid the injury, or that the horse in his fright would attempt to cross the tracks, and if they failed to stop the train to prevent the injury, if it could have been done, you will find for the plaintiff." Whatever error there is in this instruction, it was not cured by any other given in the case. There was no hindrance or impediment to free passage over the railroad track by the horse, and, if there had been evidence of such, the railroad company is under no obligation to keep its right of way cleared of obstacles, so that animals can pass over and across its track freely. Furthermore, it is not the absolute duty of persons running a train to stop it in order to avoid an injury, even if it can be done. *L. R. & F. S. Ry. Co.* v. *Trotter*, 37 Ark. 593. All the evidence on the subject adduced in the case is to the effect that the train could not have been stopped after the horse came in view of the fireman, who was keeping the watch on that side, and before the horse was struck.

Besides, this instruction was confusing to the jury, and for reasons should not have been given, and was prejudicial, especially in a case so close as to the facts.

The fourth instruction asked by plaintiff, and given by the court, in terms, requires all the employees of the company to keep the lookout required by statute, and makes the company liable for the neglect of any of them to do so. That is not the law, but this error was cured by the giving of the second instruction asked by the defendant, the latter being in the nature of an explanation of the former, rather than in absolute contradiction of it.

The third instruction asked by the defendant† might have been given, with the modification given by this court, in construing the

---

† The third instruction asked by defendant is as follows: "No. 3. The statute of this state requiring the persons in charge of a train to keep a constant lookout for persons and property upon the track does not require any lookout to be kept for stock on the right of way or elsewhere not on the track."

lookout statute, to the effect that in stock cases objects on the right of way which naturally fall within the vision of the keeper of the lookout are to be regarded as the subjects of the lookout.* But this is as far as this court has gone in widening the scope of the required lookout.

Mainly for the error in giving the second instruction asked by the plaintiff, and above referred to, the judgment is reversed, and the cause remanded for a new trial.

---

* *St. Louis S. W. Ry. Co.* v. *Russell,* 64 Ark. 236.