J. H. NICHOLSON, R. E. NICHOLSON, partners, do-
ing business under the name of J. H. NICHOLSON
& SON, Respondents, v. THE CHICAGO, MIL-
WAUKEE & ST. PAUL RAILWAY COMPANY,
Appellant.

Kansas City Court of Appeals, May 1, 1911.

1. **RAILROADS: Negligence: Evidence: Operation of Trains:
Killing Horses.** In an action to recover damages for the negli-
gent killing of two horses by a train on defendant's railroad,
where plaintiffs relied entirely upon the third count of their
petition which averred negligence in the operation of the train.
*Held*, that the court, sitting as the trier of fact, need not accept
as conclusive the assertion of the engineer that, with a clear
straight track, and on a bright sunshiny day, he could not dis-
tinguish the horses from men at a greater distance than 400
feet.

2. ————: ————: **Duty to Stop or Whistle.** Although the mere
fact that the engineer saw the horses on the track ahead in
time to avoid killing them, did not impose a duty on him to
begin stopping the train, nevertheless, where the stock is dis-
covered to be in peril, and likely to be struck by the train, if
not scared away by the stock whistle, or saved by stopping
the train, the duty arises on the discovery of such peril, to
whistle or stop, and the failure to do either, or both, if neces-
sary, is negligence.

3. ————: ————: **Duty to Stop.** Where the engineer must have
observed the horses in question running wildly down the track,
recrossing the cattle-guard in their excitement, and where the
track was inclosed, and it may not have been expedient to give
the stock alarm, the trial court, sitting as a jury, was justified
in concluding that the engineer should have realized from the
first view of the situation that the horses were in peril that
called imperatively for the stopping of the train, and, the evi-
dence of plaintiffs that no proper effort to stop was made, being
substantial, the charge of negligence in the operation of the
train, held to be supported by proof.

Appeal from Putnam Circuit Court.—*Hon. G. W.
Wanamaker*, Judge.

AFFIRMED.

*O. W. Dynes, E. M. Harber* and *E. R. Sheetz* for appellant.

*F. B. Davis* and *N. A. Franklin* for respondent.

JOHNSON, J.—This is an action to recover damages for the negligent killing of two horses by a train on defendant's railroad.

The petition is in three counts—the first two base a cause of action on the failure of defendant to comply with statutory requirements to maintain fences and cattle-guards; the cause pleaded in the third count is negligence in the operation of the train. The answer tendered an issue as to all of the constitutive facts pleaded in the petition. A jury was waived and after hearing the evidence the court rendered judgment for plaintiffs on the third count of the petition. Plaintiffs dismissed the first and second counts before judgment was given on the third. Defendant appealed.

Plaintiffs were partners engaged in the livery business at the village of Lucerne. The railroad runs through the village in a north and south course. Immediately west of the station and yards is a public street and plaintiffs barn was on the west side of this street about two hundred yards northwest of the depot. A public road crosses the railroad 722 feet north of the depot. North of this road the track is fenced. South to a point some distance beyond the depot are the station grounds and yards which are unfenced. One thousand three hundred and eighty-six feet north of the public road is a cattle-guard. The horses were killed between the public road and the cattle-guard at a point about 950 feet north of the road. The main track was straight and passed on the east side of the depot. The passing track was east of the main track from which it deflected at a switch 150 feet south of the cattle-guard. A house track on the west side of the depot diverged from the main track at the south line

of the public road.  A north-bound freight train stood
on the passing track and its locomotive was nearly op-
posite the place where the horses were struck on the
main track.  In some way the horses escaped from the
barn and, crossing the wide street, reached the railroad
grounds.  Their halters were on and they ran north up
the track to a point some distance north of the cattle-
guard which, in their excited condition, they crossed
without injury.  Trainmen from the freight train ran
up and succeeded in turning them.  They ran south
on the track, recrossed the cattle-guard and reached a
point nearly opposite the freight engine, when a south-
bound special passenger train, running at high speed
and not scheduled to stop at Lucerne, struck and killed
them.  The train consisted of an engine, caboose, and
passenger car.  It was running at a speed of thirty-five
miles per hour and there is substantial evidence that it
made no effort to stop until the collision, when the
brakes were applied and the train was brought to a
standstill in a distance of about four hundred feet. The
engineer whistled for the depot but it is not claimed he
gave the stock alarm after he discovered the horses on
the track.  The track was straight, the day was clear,
and the engineer states that he was looking ahead along
the track as he approached the village.  He saw the
horses and the men who were chasing them, but as the
horses were running down the track, he could not dis-
tinguish them and thought they were men until he came
so near that they were barely four hundred feet away,
when he discovered they were horses.  Then, he states,
he applied the brakes and stopped as soon as possible.

Defendant argues that its demurrer to the evidence
should have been sustained.  The dismissal of the first
and second counts of the petition, which we think was
a proper step for plaintiffs to take, restricts our inquiry
to the single issue of whether or not negligence on the
part of the engineer in the running of his engine, was
the proximate cause of the injury.  We shall concede

for argument the position of counsel for defendant that the horses were trespasses on the track; that the engineer was under no duty to plaintiffs to avoid striking them until he discovered they were in peril, and that "if these animals appearel in a position of peril within such a distance that the train could not be stopped by ordinary care, in time to have avoided the injury, there is no liability."

With these concessions, the evidence of plaintiff still supports a reasonable inference of negligence, and since no declarations of law were given or even asked, we must draw every reasonable inference in aid of the judgment that the evidence will support. That the engineer saw the horses at the earliest moment it was possible for human eyes to distinguish them is a fact asserted by the engineer himself and removes from the case all question of reasonable care in maintaining a proper lookout. That he could not distinguish the horses from men at a greater distance than four hundred feet is an assertion we do not accept as conclusive. With a clear, straight track and on a bright sunshiny day, the court, sitting as the trier of fact, would have been warranted in indulging the inference that the vision of the engineer could and did separate the horses from the men at a much greater distance. We do not hold the mere fact that the engineer saw the horses on the track ahead in time to avoid killing them imposed a duty on him to begin stopping the train. As we said in Warren v. Railway, 59 Mo. App. l. c. 371: "The public interest requires that railroads shall be run on time and prompt and punctual connections made. This is a duty they owe the public. A train should not always be stopped or its speed slackened so soon as stock are discovered upon its track. Ordinary prudence and caution require the engineer to promptly endeavor by blowing the whistle to frighten them off, but do not require that the train should be stopped or its speed slackened when he may reasonably believe that they will leave the track and there is no

cause or reason to suppose there is any risk or danger. [1 Thompson on Negligence, 506, cases cited in note 9; Railroad v. Trotter, 37 Ark. 593; Railroad v. Barlow, 71 Ill. 640; Darling v. Railroad, 121 Mass. 118."]

But where the stock is discovered to be in peril and likely to be struck by the train if not scared away by the stock whistle or saved by stopping the train, the duty arises on the discovery of such peril to whistle or stop and the failure to do either, or both if necessary, is negligence.

The engineer must have observed these horses running wildly down the track, recrossing the cattle-guard in their excitement which had been increased by the men chasing them. The track was inclosed and it may not have been expedient to give the stock alarm, but the court, sitting as a jury, was justified by these facts and cirumstances in concluding that the engineer should have realized from the first view of the situation that the horses were in peril that called imperatively for the stopping of the train. The evidence of plaintiffs that no proper effort to stop was made is substantial and reasonable, and we hold that the charge of negligence is supported by proof.

The judgment is affirmed. All concur.