## RAILWAY COMPANY *v.* FERGUSON.

Opinion delivered December 3, 1892.

*Railway—Injury to stock—Defective fence.*

> A railway company which enclosed part of its track with a barbed wire fence and permitted it to fall into disrepair is not liable for injury to a colt which, uninvited, strayed upon the track through a gap in the fence, became frightened by a train whistle and ran into the fence, and was thereby wounded and killed, there being no duty upon the part of the railway to build the fence or to keep it in a state of repair.

Appeal from Hempstead Circuit Court.

RUFUS D. HEARN, Judge.

Ferguson sued the St. Louis, Iron Mountain & Southern Railway Company for the killing of a colt worth $55. Ferguson testified that he was the owner of the colt in controversy, and that the same was worth $55 ; that, sometime in May, 1890, he was walking along defendant's track, a few miles south of Hope, within 100 yards of where his mare and colt were feeding ; that a train came along and frightened the colt, and it ran into a wire fence near the track and cut its throat, from which wound it died. Witness stated that the fence had been there about two or three years, and was one-half or one mile in length. Witness had never noticed said fence being repaired, and at the time of the accident it was in a very bad condition. It was not connected with the railroad at the ends and had several gaps in it at intermediate points. Stock had no trouble in getting on the inside between the fence and track at the ends and gaps. The colt was on the track, and the engineer of the train blew his whistle to frighten the colt off the track.

Two other witnesses testified as to the defective condition of the fence, and that the fence had been erected by defendant.

The following instruction, asked by plaintiff, was given, over defendant's objection:

"The jury are instructed that if you find from the evidence that the defendant, the St. Louis, Iron Mountain & Southern Railway Company, erected the fence the colt in controversy ran into, and that it so negligently and carelessly erected and maintained same by failing to connect the fence at the ends of same with the railroad track and by failing to keep same properly repaired, and that by reason of such neglect the colt in question was permitted to pass on the inside of said fence between the fence and railroad track, and while it was between the said track and fence, it was frightened by the train of said defendant *and ran into said fence and had no other means of escape*, and was killed by reason of running into same, you may find for the plaintiff."

The jury returned a verdict in favor of plaintiff for $55.00. A motion for a new trial was overruled, and defendant appealed.

*C. B. Moore* and *Dodge & Johnson* for appellant.

The animal was not killed by the running of defendant's train. Mansf. Dig. sec. 5537. Railroads are required to keep a bell or whistle, and to use them at crossings, and for warning stock, etc. Ib sec. 5478. There is no law requiring railroads to fence their track; yet they have the right to fence their property. In the absence of a statute requiring it to fence its track, there is no legal obligation to do so. 13 A. & E. R. Cas. 58 ; 1 Ib. 620 ; 22 Id. 589 ; 7 Id. 541 ; 47 Ark. 330. Nor is there any obligation on the railroad to *maintain* a fence or keep it in repair. The doctrine laid down in 36 Ark. 607 and 37 Id. 593 is conclusive of this case.

*Jas. H. McCollum* for appellee.

The injury was *caused* by the running of defendant's trains. Mansf. Dig. sec. 5537. It was caused by the

negligent building and maintaining of the fence. 11 Exch. 784; 95 U. S. 439. It is lawful to permit stock to graze upon the commons. 37 Ark. 562; 46 Id. 207. The negligently constructed fence was the proximate cause of the accident. 16 Ark. 308. It was a trap or dead-fall for stock. 46 Ark. 207; 53 Id. 381; 54 Id. 209; 15 Am. Rep. 530; 2 Am. St. Rep. 213; Bish. Non-Cont. Law, sec. 415; 16 Ind. 314; 16 Am. & E. Enc. Law, p. 389 and note.

BATTLE, J.    Appellant enclosed a part of its railway track and right of way with a wire fence. For three years the fence was permitted to stand without repairs. The result was, at the end of that time, it was in a very bad condition; there were several gaps in it; and it was not connected with the track at the ends. While it was in this condition the colt of appellee strayed on the right of way of appellant and upon the part of its railway track so enclosed; and an engineer of an approaching train, discovering it upon the track, sounded the alarm, frightened the colt, and it ran from the track against the wire fence, by which its throat was cut; and the colt died from the wound.

Was the appellant liable to the appellee for the loss occasioned by the failure to construct the fence so as to make it harmless to stock and keep the same in good repair?

A well established rule of law is, that the owner of private grounds is under no obligation to keep them in a safe condition for the benefit of trespassers or those who may go upon them uninvited, from motives of private convenience in no way connected with the owner, or from curiosity. He is under no obligation to fence or guard any wells, ditches, stone quarries, or other pitfalls or dangerous places on his unenclosed grounds, in order to protect animals straying thereon against injuries; and is not liable for the damages suffered because

he failed to do so. *Hughes* v. *H. & St. Jo R. Co.* 66 Mo. 325 ; *Clary* v. *Railroad Co.* 14 Neb, 232; *Leseman* v. *S. C. R. Co.* 4 Rich. L. 413; *Gilman* v. *S. C. & P. Ry. Co.* 62 Iowa, 299 ; 1 Thompson on Negligence, pp. 298, 303 ; 3 Lawson's Rights, Remedies and Practice, secs. 1149, 1151, and cases cited.

In *St. L., I. M. & S. Ry. Co.* v. *Fairbairn*, 48 Ark. 493, Chief Justice Cockrill, speaking for the court, said : "The appellee was injured by stepping into a cavity caused by a rotten plank in the appellant's platform at Bierne Station. The jury found the issues in his favor, and the question whether the appellee was lawfully on the platform at the time he was injured is the only one properly left for our consideration. If he was there merely from curiosity, or for his own convenience for the transaction of business in no way connected with the railway company, no relation existed between him and the company which imposed upon the latter the duty of exercising even ordinary care in maintaining a safe platform for his own use, and it is not liable for his injury."

Is an owner of private grounds under greater obligations to owners of live stock as to such stock? In *K. C., S. & M. Ry. Co.* v. *Kirksey*, 48 Ark. 368, the court said : "The railroad's obligation as a carrier, or its duty to a person rightfully upon its track, are not coincident with the negative duty not to injure, unnecessarily, stock that wanders upon its right of way and track. It is held to a rigid observance of its public duties, but as to stock straying upon its right of way, its obligation is not different from that of other owners or occupants of real estate. * * * The statute has placed no obligation upon the railroad in that respect, and the rights and liabilities of the company and stock owner are governed by the common law. The company is not required to fence out the stock, and the stock owner enjoys the passive license of free pasturage upon

its open premises as upon those of natural persons, without being held to accountability as a trespasser.   *   *   * The technical wrong that the land owner suffers by the entry of another's stock is regarded as too slight to engage the attention of the law, is *damnum absque injuria*. But the privilege of entry and free pasturage is not a right which can be demanded and enforced—it is only an immunity from suit or punishment, and the company or other land owner is under no obligation to expend money or labor in preparing the land for a convenient or a safe enjoyment of it." And this court, in that case, held that " the duty of railroad companies to avoid unnecessary injury to stock upon their tracks does not require them to keep their entire right of way clear of obstructions which conceal stock from view of the engineer of the train until they rush upon the track unseen, and too late to avoid the injury."

The law upon this subject, and the reason for it, are clearly and succinctly stated by Chief Justice Gibson in *Knight* v. *Abert*, 6 Penn. St. 472, he said: "In this, and perhaps every American State, an owner of cattle is not liable to an action for their browsing on their neighbour's unenclosed woodland. But it follows not that because such browsing is excusable as a trespass, it is a matter of right. It is an immunity, not a privilege; or, at most, a license revokable at the will of the tenant, who may turn his neighbour's cattle away from his grounds at pleasure. Their entry is, in strictness, a trespass, which, for its insignificance, is not noticed by the law, probably on the foot of the maxim, *de minimis*, or perhaps because it is better that all waste lands should be treated as common without stint. It certainly saves vexatious litigation. The particular loss from it is unappreciable, even as a subject of nominal damages, and would probably be held so, even in England, where waste land is altogether worthless. But even if an

owner of cattle had the right claimed for him, the tenant would not be bound to expend his money or his labor in preparing his land for the safe and convenient enjoyment of it. A man must use his property so as not to incommode his neighbour; but the maxim extends only to neighbours who do not interfere with it or enter upon it. He who suffers his cattle to go at large, takes upon himself the risks incident to it. If it were not so, a proprietor could not sink a well or a saw-pit, dig a ditch or a mill-race, or open a stone quarry or a mine-hole on his own land, except at the risk of being made liable for consequential damage from it—which would be a most unreasonable restriction of his enjoyment. He might as well be required to level a precipice, put a fence around a swamp, or cut down reclining trees. It is enough, in all reason, that his neighbour's cattle have the range of his forest, without imposing upon him the duty of looking to their safety. If the owner of them do not choose to enjoy his license on that footing, let him keep them at home, or send a herdsman along with them. The law imposes no such duty on the tenant."

Upon the principle stated in the cases we have cited, railroad companies are not required to cover culverts and bridges in their tracks so as to permit stock to pass over them in safety ; yet it is a notorious fact, as attested by the records of this court, that cattle frightened by approaching trains have run into uncovered culverts and been killed, and it never has been suggested by any court, so far as known to us, that a railroad company was liable for such injuries because the culverts were uncovered. *Hot Springs R. Co.* v. *Newman*, 36 Ark. 607 ; *L. R. & F. S. Ry. Co.* v. *Trotter*, 37 Ark. 593.

There is, however, a class of authorities which holds, by way of exception to the general rule, that it is the duty of the owners of private grounds to erect suitable guards around the excavations made by them thereon so

near a public road that persons and animals passing on the road might accidentally fall into the same, and that he is liable to any one who may be injured by accidents resulting from their failure to do so. *Clary* v. *Railroad Co*. 14 Neb. 232, and cases cited ; 3 Lawson's Rights, Remedies and Practice, sec. 1157, and cases cited ; 1 Thompson on Negligence, p. 307. In *Townsend* v. *Wathen*, 9 East, 277, A kept on his open grounds near the highway, without notice, certain traps baited with flesh for the purpose of catching his neighbor's dogs, and B's dog, led by his natural instinct, ran into one of these traps and was killed, and it was held that A was liable to B for the damages caused by the killing of the dog. And in a case in which the defendant had dug a pit under a cotton gin, near a highway, and kept it unenclosed, with corn and cotton seed scattered about it, and the plaintiff's cow, which he had turned out at a place remote from the gin, fell into it and was killed, this court held that the defendant was guilty of negligence and liable to the plaintiff for the value of the cow. *Jones* v. *Nichols*, 46 Ark. 207.

In this case the appellant was under no obligation to construct and maintain a fence along its track or highway, or to place guards around wells, or other pitfalls or dangerous agencies on its right of way, to protect animals, uninvited, wandering thereon against injuries. It was under no greater obligations to provide safeguards against wire fences than it was to place them around pits or other dangerous places. The peculiarity of the danger does not alter the duty or liability. The owner of animals in permitting them to run at large assumes all the risks to which the animals are exposed by reason of such dangers.

In the trial of this case no evidence was adduced tending to show that the appellant placed anything on its right of way calculated to invite or induce horses and

cattle to go thereon, between its track and the wire fence, and that appellee's colt was thereby invited or induced by appellant to go upon the same at the time it was killed, as in the case of *Sisk* v. *Crump*, 112 Ind. 504, cited by appellee. There was no evidence tending to show that the wire fence was constructed or maintained in such manner and so near a public street or road as to make it dangerous for horses or cattle passing along the street or road. There was no evidence to show that this case comes within any exception to the general rule. The evidence tended to prove, in short, the following facts: That the wire fence was in bad condition by reason of the gaps in it; that appellee's colt, uninvited, wandered upon the right of way and track of appellant, was frightened by an alarm lawfully given on a passing train, and ran against the fence and was thereby wounded and killed. The case comes clearly within the general rule, as we have stated it.

But appellant did owe to appellee the duty, when it discovered his colt upon its track, to use ordinary or reasonable care to avoid injury to it by running its train against it, or by frightening and driving it by unnecessary alarms against the wire fence. *Railway Co.* v. *Roberts*, 56 Ark. 387 ; *Atlanta & W. Pt. R. Co.* v. *Hudson*, 62 Ga. 679.

Reversed and remanded for a new trial.

Mansfield, J., dissented.