ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
v. WIRBEL.

Opinion delivered May 20, 1912.

1. NEGLIGENCE—LIABILITY OF OWNER OF PREMISES TO TRESPASSER.—One who, in going upon another's premises, is a mere trespasser or licensee is not entitled to recover for injuries there received unless the injuries were wantonly inflicted or the other had notice of his being in a place of danger in time to avoid injuring him. (Page 242.)

2. SAME—LIABILITY TO PERSON INVITED ON PREMISES.—One who goes upon the premises of a railroad company seeking employment at a place

where he was told that he would find the official who was authorized to employ him, and is injured without negligence on his part, is not a trespasser, but goes there by implied invitation, and is entitled to recover if his injuries are due to the company's want of ordinary care. (Page 243.)

3. SAME—BURDEN OF PROOF.—In an action by one injured while on another's land, the injured person has the burden of proving that he was there by invitation. (Page 244.)

4. SAME—DEFECTIVE MACHINERY—FAILURE TO REPAIR.—Where a person goes upon another's premises by implied invitation, and is injured by the bursting of defective machinery, the latter's liability depends upon whether the bursting of the machinery could reasonably have been foreseen as the natural consequence of failure to repair such machinery. (Page 244.)

Appeal from Desha Circuit Court; *Antonio B. Grace,* Judge; reversed.

### STATEMENT BY THE COURT.

This suit was brought by Harry Wirbel, a minor, by his mother, as next friend, to recover damages for a personal injury alleged to have been received on account of the negligence of the defendant, by reason of the collapse of a coal hoisting machine, on its premises in its yards, at McGehee, Arkansas. The complaint alleged:

"That upon December 15, 1909, the said Harry Wirbel, while in pursuance of his duty, and by and with the consent of the defendant, and while upon the property of the defendant at McGehee, Desha County, Arkansas, was seriously and permanently injured through no fault of his own, but by the wanton and wilful and gross carelessness of the defendant company. That the defendant kept and maintained at McGehee, on its property, a coal chute, which it had allowed to become in such bad condition that it was dangerous to operate the same, and that the said defendant knew of the condition thereof, and that it was unsafe to operate the same, and was liable to cause the very accident that occurred, that said defendant had been warned of the condition said machinery was in, and had taken no steps to repair the same, or replace it with new machinery or to place the same in condition to protect its employees and the public. That the condition of said chute was not known to the said Harry Wirbel.

"That while the said Harry Wirbel, who had just come to

the doorway of the building in which the machinery operating the said chute was contained, and was standing there preparatory to making an inquiry of the engineer in charge, who, at the time, was busy, the machinery operating the said machinery burst and broke, and he was struck by a piece of the broken engine, his right leg was cut off, several ribs were broken, and he was otherwise badly bruised and cut and injured, suffering great bodily pain and mental pain and anguish. And at the same time the engineer operating the plant was injured."

The complaint further alleged the necessity for the amputation of his leg, the loss of time and the pain and anguish occasioned by it, as well as the expense for medical attention, and prayed for damages in the sum of $20,000.

The answer denied each allegation of the complaint.

Henry Wirbel is a locomotive fireman, and, according to his statement, went to McGehee, with a view to securing employment, having heard that appellant company was in need of and employing firemen there. He was not acquainted with any one at McGehee, and, upon the morning after his arrival accosted a negro, whom he saw near the station, and asked directions to the master mechanic's office. He went to the office and inquired of the office man for the master mechanic, without disclosing his purpose for desiring to see him, and was told that the master mechanic was not in, but was somewhere in the yards, and that he could probably find him there. In his search for the master mechanic, he came near the coal chute, not knowing what it was, looked in the door a minute, spoke to the operator of the hoisting machine, and was just on the point of asking for the master mechanic when the machinery broke and fell on him, cutting off his right foot near the ankle, and otherwise injuring him. His leg was afterwards amputated above the knee.

Paffe stated he was operating the coal chute engine the day it broke, but did not know Wirbel, and did not see him about the engine room that morning nor at all on the day of the injury before seeing him at the doctor's office on the stretcher, after the accident occurred; that the frame that held the drum on the sides of the engine was broken, and the weight of the bucket going up lifted the two parts of the frame, and also the drum off the engine; that he was present when it oc-

curred, but did not know what happened; that when he came to, he was thirty-three feet down in the hole; that the engine was in bad shape, and had been since he went to work; that he had called the attention of the officials to the engine immediately after he started to work, and some men had been working on it, but didn't seem to do any good; notified the master mechanic a day or two before the accident what was going to happen, and where he would land.

McCuen testified that he was an engineer by occupation, and before December 15 was the coal chute and fuel foreman at McGehee for defendant and operating the hoisting engine that carried the coal bucket under the chute. The condition of the machinery was very bad. The frame was cracked about two-thirds down on one side, on the left-hand engine for a distance of six or seven inches. Both frames were cracked on the other engine. It was a twin hoisting engine, and the spool or drum was in between the two engines. It sat right over the two engines attached to the frame by a boxing, and when the engine worked the frame would give so that you could see it. The engine was in a dangerous condition. He called on the foreman several times to have it fixed, but nothing effective was done to repair it, and he finally quit work because of its dangerous condition, but remained a week after giving notice for the arrival of his successor, Paffe.

The coal chute is a little south and east of the depot at McGehee, a distance of about 250 or 300 yards. Leaving the depot going to it, a man would have to cross the main line, and, if he went straight, he would have to cross about three tracks; then by going a little further over on the coach track, on a straight line, to the roundhouse, and coming down by the roundhouse, he would only have to cross one track, but he would have to come down the track to the coal chute on which they bring the engines to be coaled. If he came around the other way, he would have about fifteen tracks to cross. Lots of people travel up and down track 13 in order to go to the negro settlement below the coal chute, and some people use that track as a passage way, although there is a wagon road on the other side of it.

There was testimony relative to the injury and the resultant damages.

The court instructed the jury, refusing to give the four instructions requested by the railroad company, and gave, on its own motion, over appellant's objection, instruction numbered 1, as follows:

"If you find from the evidence that, at the time of plaintiff's injury, he had gone to the place of injury, not as a mere idler or loafer, but *bona fide*, in search of the master mechanic, in order to obtain employment as a locomotive fireman, in the service of defendant company, and that while so engaged, and without any negligence or want of ordinary care upon his own part, he was injured by the bursting or breaking down of some part of the machinery used by defendant for the hoisting of coal at the chute; and if you further find that such bursting or breaking of said machinery was caused by its unsafe and defective condition, and that such unsafe and defective condition was known to the officers of the defendant company, whose duty it was to have the same repaired, and had been so known for a sufficient length of time before the accident to give them reasonable opportunity to have said machinery put in reasonably safe condition, then the plaintiff was not a trespasser on the grounds of the defendant, and is entitled to recover damages for the injuries sustained."

The jury returned a verdict for plaintiff, and from the judgment the railroad company appealed.

*James C. Knox, E. B. Kinsworthy* and *W. E. Hemingway,* for appellant.

The view indicated by the court in its statements made during the taking of testimony and in its first instruction to the jury is erroneous in that it holds (1) that any person seeking employment has an invitation to go into the yards and private grounds of an industry to obtain such employment, and (2) that such invitation extends not only to the place where business is transacted, but also extends to the entire premises, including the places used for the private purposes of the owner. 57 Ark. 16, 18; 89 Ark. 122, 128; 77 Ark. 561; 90 Ark. 279, 285; 69 Ark. 489, 498; 2 Cooley on Torts, 1258, 1259, 1264; 21 N. E. (Mass.) 369; 31 N. E. (Mass.) 644; 120 Fed. 921, 924; 22 Pac. 256; 119 S. W. (Tex.) 871; 128 S. W. 376; 62 N. E. 968; 91 N. E. 886; 47 S. E. 975, 977; 50 S. E. 1003, 1004; 51 Atl. 505; *Id.* 708.

The instruction does not correctly state the rule for determining the defendant's liability, if the plaintiff was a licensee. It imposes the positive duty upon defendant to exercise care for the safety of persons on its premises as bare licensees, whereas the law imposes no such duty, but only holds the owner in such case liable for wilful or wanton injury after the presence of the licensee on the premises is discovered. It also makes the defendant liable for an injury that could not reasonably have been anticipated. 90 Ark. 278, 285; 55 Ark. 435; 69 Ark. 489, 498; 57 Ark. 16, 18; 91 N. E. 886; 89 Ark. 122, 128; 77 Ark. 561; 22 Pac. 256; 21 N. E. 644; 62 N. E. 968.

The instruction is further erroneous in that the purpose of plaintiff to get employment would not constitute an invitation—that must proceed from the defendant.

If there was an implied invitation to go to the office of the master mechanic for employment, it would not extend to the yards, etc., used by the defendant in doing its work. 48 Ark. 106, 126.

*C. P. Harnwell,* for appellee.

The instruction is right. The evidence shows not only that the appellant was grossly negligent in permitting its coal chute to remain in an extremely dangerous condition, menacing the life of any one near it, but also that it had invited Wirbel to go upon the grounds seeking the master mechanic for a lawful purpose, by making it known that it was seeking firemen. If there was not an express invitation, then there was certainly an implied invitation. Authorities cited in support of appellant's contention either do not apply to the facts in this case or are favorable to appellee. 89 Ark. 122; 77 Ark. 561; 86 Ark. 590; 90 Ark. 398; *Id.* 473; *Id.* 278; 95 Ark. 275; 93 Ark. 564; 88 Ark. 181; 92 Ark. 350. As to the duty owing by the owner of premises to a licensee thereon, see 56 N. Y. S. 118; 51 N. Y. 109; 90 N. Y. 358; 94 N. Y. 328; 47 S. E. 975; 47 Atl. 169; 41 S. E. 216; 56 Atl. 761; 92 N. W. 65; 137 Fed. 472.

An owner who is affirmatively and actively negligent in the management of his property or business, whereby one is injured, even though he is a bare licensee, is liable. 101 N. Y.

391; 98 Mass. 577; 102 Mass. 4899; 2 N. Y. 289; 90 Ind. 205; 155 Mass. 472; 66 Conn. 528; 29 Cyc. 509-10.

One who goes on the premises of another by express or implied invitation of the owner may recover damages for an injury due to a failure on the part of the owner to keep the premises in a reasonably safe conditon.   146 Ala. 259; 62 Neb. 66; 52 Atl. 229; 83 Va. 90; 119 Ga. 219; 115 Ind. 399; 33 N. E. 466; 13 N. W. 499; 60 Mich. 86; 51 Atl. 505; 92 Mass. 368; 53 N. Y. Supp. 1; 56 Minn. 460; 4 Rich. Law (S. C.) 228.

Kirby, J., (after stating the facts).   It is contended by appellant that appellee was a trespasser upon its grounds, to whom it owed no duty, except not to wantonly injure him, and in any event that said instruction numbered 1 is erroneous; and, upon the other hand, that appellee was there by invitation of the company and injured by its negligence without fault upon his part.

"As a general rule, the owner and occupier of real estate is under no obligation to make it safe or to keep it in any particular condition for the benefit of trespassers, intruders, mere volunteers, or bare licensees, coming upon it, without his invitation, express or implied.   *   *   *   The owner of real property who expressly or impliedly invites the public, or particular members of it, to come upon his premises, assumes the duty toward them to exercise reasonable care to the end that such premises shall not contain dangerous obstructions, pitfalls, or the like, which may result in their injury; and if, coming upon his premises by such express or implied invitation, they are injured without their own negligence or fault, by reason of his failure to exercise reasonable care to have his premises safe, they may compel him to pay damages."   1 Thompson on Negligence, § 945; 2 Cooley on Torts, p. 1268.

"The owner of private property is under no obligation to keep it in a safe condition for trespassers or idlers, or those who come upon the premises, not upon invitation, express or implied, but for their own convenience or pleasure."   2 White on Personal Injuries on Railroads, § 1086.

In *St. Louis, I. M. & S. Ry. Co.* v. *Dooley*, 77 Ark. 561, the court said: "The bare permission of the owner of private grounds to persons to enter upon his premises does not render him liable

for injuries received by them on account of the condition of the premises. But if he expressly or impliedly invites, induces or leads them to come upon his premises, he is liable in damages to them—they using due care—for injuries occasioned by the unsafe condition of the premises, if such condition was the result of his failure to use ordinary care to prevent it, and he failed to give timely notice thereof to them or the public." *Hobart-Lee Tie Co.* v. *Keck,* 89 Ark. 128; *Railway Co.* v. *Ferguson,* 57 Ark. 16.

Our court has held further that railroad companies owe no affirmative duty of care to bare licensees, who must take their license with its concomitant perils. *Arkansas & La. Ry. Co.* v. *Sain,* 90 Ark. 278; *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson,* 69 Ark. 489; *Chicago, R. I. & P. Ry. Co.* v. *Payne,* 103 Ark. 227.

From the authorities, it appears that plaintiff had no right to recover in this suit if he was no more than a trespasser or licensee, there being no proof of any wanton injury, or that appellant had any notice of his being in a place of danger in time to have avoided injuring him.

It will not be questioned, however, that a man has the right to labor and to seek employment wherever it can be found, without invading the rights of others, and in seeking employment of a railroad company he will not be regarded as acting for his own convenience, but rather for a purpose connected with the business of the railroad as well; or the common interest or mutual advantage of himself and such company, which must employ agents and servants in order to operate its road and transact its business. If Wirbel understood that appellant company was in need of and employing firemen at McGehee, he had the right to go to the place where men were usually employed there and ask employment of any agent of appellant company authorized to engage such employees; and, if the master mechanic was appellant's agent for the employment of such servants, and Wirbel went to his office seeking employment, as he said he did, he was within his right in so doing. *Shelby* v. *Cinn., N. O. & T. P. Ry. Co.,* 85 Ky. 229, 3 S. W. 157; 2 Cooley on Torts, p. 1265.

In order to recover, Cooley says that the plaintiff must not only show an invitation, express or implied, but also that

at the time of the injury he was in the part into which he was invited to go, and that he was using the premises in the manner authorized by the invitation.    2 Cooley on Torts, p. 264; *Smith* v. *Hopkins*, 120 Fed. Rep. 921; *Schmidt* v. *Bauer*, 22 Pac. (Cal.) 256; *Stamford Oil Mill Co.* v. *Barnes*, 128 S. W. (Tex.) 375.

If the master mechanic had authority to employ locomotive firemen and was accustomed to do so at his office or anywhere in the yards where he might be found, and his office man directed appellee to seek him in the yards, in so doing he still had the right to rely upon the invitation and the duty of appellant to exercise ordinary care to protect him from injury, and, so long and into such places as he could go in the yards, without being himself negligent, he would have the right to continue the search for the master mechanic; and, if he was injured by the negligence of appellant while so engaged and in the exercise of ordinary care himself, it would be liable for the injury.    But there was no testimony in the case showing that it was customary for the master mechanic, or that he had authority, to employ servants of the class in which plaintiff desired employment, nor any testimony showing that such servants were employed at his office, or had ever been employed in the yards, wherever he might be found.

Instruction numbered 1, given, was erroneous, therefore, in any event. It declared the law to be that, if plaintiff went to the place of the injury, not as an idler or loafer, but in search of the master mechanic with the *bona fide* intention to obtain employment in the service of the defendant company as a locomotive fireman, and while so engaged was injured, without any negligence or want of ordinary care on his part, by the breaking down of certain machinery, of the defective condition of which the defendant had had notice a sufficient length of time to cause it to be repaired, he could recover; making his right to recover dependent, not upon the question of whether he was upon the company's premises by invitation, and excluding entirely from the jury the question of whether or not the company owed him a duty to protect him while upon its premises and was negligent in having failed to exercise ordinary care in the performance of that duty.

It was shown that the machinery which collapsed and

injured appellee was in a defective and dangerous condition of which the company had long had notice, but the question of whether the failure to repair said machinery was a lack of ordinary care upon appellant's part to protect appellee, who was but temporarily on its premises, and not expected to be about this machinery at all, was one for the jury, and, as already said, taken from it by said instruction. If appellee was rightfully at the place where he was injured, and it devolves upon him to show by a preponderance of the testimony that he was, then the company was only bound to the exercise of ordinary care to protect him against injury at the time and place; and as to whether it failed to exercise such care the jury alone could determine, under proper instructions. If the injury that occurred from the bursting of the machinery was not one that could reasonably have been foreseen as the natural and probable consequence resulting from the failure to repair the machinery, in the light of the attending circumstances, it was not caused proximately by the failure of the appellant to repair the machinery, and appellee had no cause of action at all. As to whether it did proximately result from such negligent act, would also have been a question for the determination of the jury. *Pulaski Gas Light Co.* v. *McClintock,* 97 Ark. 576; *Helena Gas Co.* v. *Rogers,* 98 Ark. 413.

For the error indicated, the judgment is reversed, and the cause remanded for a new trial.