GIEM *v.* WILLIAMS, ADMINISTRATRIX.

4-8937                                    222 S. W. 2d 800

Opinion delivered July 4, 1949.

Rehearing denied October 3, 1949.

*Vol T. Lindsey,* for appellant.

*Eli Leflar, Harvey L. Joyce* and *Glen Wing,* for appellee.

ED. F. McFADDIN, Justice. This is an action instituted by appellee, as widow and administratrix, to recover damages for the death of Joe Williams.

Giem and Associates, hereinafter called appellants, obtained a contract to construct a dormitory on the campus of the University of Arkansas in Fayetteville. Appellants sublet the excavation work to Carl Tune. Joe Williams (hereinafter called deceased) went to the place of construction to apply to appellants' superintendent for work as a carpenter. While in appellants' shed on the premises, Williams was struck on the head by a large rock which had been hurled through the roof of the building as the result of blasting then being done by Tune in the excavation work. Williams died three days later as a result of his injuries; and this action ensued. Tune was originally named as a defendant, but was dismissed after he had paid appellee $4,000 in return for a "covenant not to sue."

The plaintiff (appellee) tried the case on the theory that the defendants (appellants) were liable for (a) failure to use proper care towards the deceased, as an invitee on the premises, and/or (b) failure to see that Tune, even as independent contractor, exercised proper care in the use of the explosives in excavation work. Appellants, for defense, claimed (a) that there was no negligence on their part; (b) that Tune was an independent contractor for whose acts appellants were not liable; (c) that deceased was not an invitee on the premises; (d) that the death of deceased was the result of an accident; and (4) that deceased was guilty of contributory negligence. The trial resulted in a verdict against appellants for

$8,950. From an unavailing motion for new trial, there is this appeal, presenting questions as to the law, the evidence and the amount of the verdict.

I. *Correctness of the Rulings of the Trial Court in Giving and Refusing Instructions.* We discuss the instructions at the outset in order to state the law before considering the evidence. Besides general instructions regarding form of the verdict, credibility of the witnesses, etc., the trial court gave five instructions as requested by appellee and 15 instructions as requested by appellants. Also, the trial court modified one of appellants' requested instructions by adding certain language as to whether the deceased was an implied invitee. In the light of what will be hereinafter stated as to the deceased's status, such modification was proper. We consider, then, the five instructions given on request of appellee, and presenting her theories for recovery.

Appellee's instruction number 1 gave the definition of an implied invitee and a statement of the duty that one in charge of premises owes such invitee, and stated the application of such to this case. Appellee's instruction number 2 presented to the jury for decision the question, whether appellants, by claiming that Tune was an independent contractor, could thereby escape liability for his negligence, if any, in the inherently dangerous blasting. Appellee's instruction number 3 presented to the jury for decision the question, whether the deceased had the right to rely on the assurances of safety when he went into the shed to await the termination of the blasting. Appellee's instruction number 4 presented to the jury for decision, whether the blasting—under the facts and circumstances in this case—was of such nature that the duty of appellants, as to proper care, could not be delegated. Appellee's instruction number 7 related to the elements of damage in the event the verdict should be for appellee. These instructions presented the law as to the liability, if any, of appellants.

A number of well-reasoned cases and authorities are cited in the briefs as bearing on these legal principles.

Besides our own cases,[1] there are also those from other jurisdictions,[2] as well as citations from general texts.[3] A good discussion on the particular point at issue—blasting by an independent contractor—may be found in 22 Am. Juris. 182, *et seq.* From all of the authorities, we conclude the law to be:

(a) that the status of the deceased as an implied invitee on the premises was a question for the jury in this case;

(b) that if deceased was an implied invitee, then the appellants owed him the duty to use proper care for his safety;

(c) that appellants, in having blasting done in the excavation for the dormitory, near a well-traveled street and in a populous center, could not escape liability, for failure to use proper care, through the claim that the blasting had been entrusted to an independent contractor;

(d) that if Tune (the independent contractor) failed to use proper care to prevent injury by missiles from the explosion, then such failure—under the facts herein—would be negligence imputed to appellants; and

(e) that the question of the contributory negligence of the deceased was a question for the jury under the evidence in this case, and was properly submitted.

Appellee's five instructions covered the above points. To set out *in extenso* the said instructions would unduly prolong this opinion. Appellants objected to the instructions by claiming that they were either general, long, abstract, or factually assumptive. Testing appellee's instructions against the objections made in the trial court and argued in the briefs, we find no errors committed.

[1] Stout Lbr. Co. v. Reynolds, 175 Ark. 988, 1 S.W. 2d 77; Holden v. Carmean, 178 Ark. 375, 10 S.W. 2d 865; Hammond Ranch Corp. v. Dodson, 199 Ark. 846, 136 S.W. 2d 484; Aluminum Ore Co. v. George, 208 Ark. 419, 186 S.W. 2d 656.

[2] Cary v. Morrison (8th CCA), 129 Fed. 177, 65 L. R. A. 659; Rosenberg v. Schwartz, 260 N.Y. 162, 183 N.E. 282; McConnon v. Hodgate, 282 Mass. 584, 185 N.E. 483.

[3] 45 C.J. 956 and also the annotation in 23 A.L.R. 1084, "Non-delegable Duty of Employer with Respect to Work which is Inherently or Intrinsically Dangerous."

II. *Sufficiency of the Evidence to Sustain Recovery Against Appellants.* In addition to the facts previously stated, there was evidence tending to show:

(1) that appellants had erected at the place of construction, about 160 feet from where Tune was excavating, the ordinary contractor's shed, which was a frame building about 12 feet wide and 30 feet long, and with a frame roof and roofing paper thereon;

(2) that the deceased and his fellow carpenter (Lindler), having learned that carpenters would soon be needed on the work, went to the place of construction in Lindler's car, which they parked on the street near appellants' shed;

(3) that deceased and Lindler, in proceeding towards the shed, met Nordstrom, appellants' superintendent, and were discussing with him the employment of carpenters, when Tune came up and advised Lindler: "You had better move your car; you are liable to get some glass broke, because they are going to shoot."

(4) that Lindler then drove his car a distance of 30 or 40 feet from where it had been parked, sat in the car until the blasting had been accomplished, and then returned to Nordstrom to complete the interrupted conversation;

(5) that when Lindler went to move his car Nordstrom and the deceased stepped into appellants' shed and were standing there "shoulder to shoulder" when the blasting occurred;

(6) that a rock "the size of a brick" crashed through the roof of the shed and struck the deceased on the head, causing the injuries which resulted in his death three days later;

(7) that in the excavation work Tune at that time was using three sticks of dynamite in each of four holes, the detonators of the dynamite being exploded simultaneously by an electric current;

(8) that the fact that dynamite was being used for such excavation was known to appellants and Nordstrom,

and the test holes for such use were shown on the plan furnished to Tune by appellants;

(9) that Tune used no mat or cushion (other than sand) over the holes for protection of the public against flying missiles, although he had on the location materials for constructing such mats; and

(10) that such mats should be used in blasting in populous places such as where this excavating was being done.

From what we have detailed of the evidence it is clear that the jury could have found that the deceased occupied the status of an implied invitee when he was in the shed with Nordstrom at the time of the blasting. In St. L. I. M. & S. Ry. Co. v. Wirbel, 104 Ark. 236, 149 S. W. 92, Ann. Cas. 1914C, 277, we held that one seeking employment was an implied invitee when he went on the premises of a company at the place he had been informed he could find the official who was authorized to employ him.[1] According to Lindler, the conversation with Nordstrom was interrupted by Tune's announcement of the impending blast; Lindler went to move his car, and deceased and Nordstrom went into the shed, apparently to await the blasting and Lindler's return before resuming the conversation. Nordstrom testified that the conversation was concluded when Tune advised the moving of the car; but Lindler's testimony and his conduct are to the contrary: so a jury question was made as to deceased's status as an implied invitee.

There was also a jury question as to whether the appellants' superintendent, Nordstrom, used proper care in selecting the shed as a place of safety and impliedly inviting deceased therein, when Nordstrom knew—or in the exercise of ordinary care, should have known—that Tune was not using mats or cushions over the holes in which the dynamite was to be exploded. Just because Nordstrom was personally willing to take the chance of injury by missiles from the blast does not furnish a

---

[1] See other cases on this point collected in West's Ark. Digest, "Negligence," § 32; see, also, discussion in 38 Am. Juris. 758, et seq.; see, also, Mo. Pac. R. Co. v. Ross, 211 Ark. 748, 202 S. W. 2d 365.

criterion of due care by appellants towards an implied invitee.

The evidence made a jury question on the issue of the contributory negligence of the deceased. There was also a jury question as to whether due care required Tune to use mats or cushions over the particular blasting about to be done, which was incident to the act of excavation on the campus of the University of Arkansas, very close to a well-traveled street. In short, we find the evidence sufficient to sustain the verdict.

III. *The Joint Tortfeasor Question as to the "Covenant Not to Sue", which Appellee Executed to Tune.* When the action was originally filed, Tune was made a defendant along with appellants. Just before the trial, Tune paid appellee $4,000 for a covenant not to sue, and, accordingly, was dismissed from the suit without any record objection being made by appellants. In the trial appellants introduced in evidence the covenant not to sue which appellee had executed to Tune, and showed to the jury that appellee had received $4,000 from Tune. After the verdict for appellee for $8,950, appellants moved the court to credit the verdict with the $4,000 which Tune had paid appellee in order to obtain the covenant. The motion was denied, and appellants claim error.

Act 315 of 1941 is the Uniform Contribution Among Tortfeasors Act, and may be found in §§ 34-1001, *et seq.,* Ark. Stats. of 1947. Appellants and appellee both cite the case of Shultz v. Young, 205 Ark. 33, 169 S. W. 2d 648 as applicable to the question now presented. In Lacewell v. Griffin, 214 Ark. 909, 219 S. W. 2d 227 we listed other cases which have involved phases of the Uniform Contribution Among Tortfeasors Act. Appellants had the right, under § 34-1007 Ark. Stats. of 1947, to make Tune a third-party defendant, even after the appellee had dismissed as to him. But, instead of availing themselves of the said section, appellants evidently decided to proceed under § 34-1004 Ark. Stats. of 1947, which reads:

*"Release of one tortfeasor—effect on injured person's claim.* A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.''

At all events, as between appellants and appellee, appellants in the trial of the case before the jury obtained the full benefit of the above-quoted section by introducing into evidence, proof as to the amount of money that appellee received from Tune. Certainly, in such circumstances, appellants were not entitled to have the court— after the verdict—make the allowance again. We hold against appellants on this said contention.

Finding no error, the judgment is affirmed.