Robert Caruso, Minor, by Michael Caruso, His Father and Next Friend, Appellee, v. City of Chicago, Appellant.

Gen. No. 40,944.

Heard in the second division of this court for the first district at the October term, 1939. Opinion filed May 28, 1940.

BARNET HODES, Corporation Counsel, for appellant; ALEXANDER J. RESA, ADAM E. PATTERSON, SYDNEY R. DREBIN and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

RYAN, SINNOTT & MILLER, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Robert Caruso, a minor, by his father and next friend, brought suit against the City of Chicago and South Shore Sheet Metal Works to recover damages for injuries sustained through a fall on the sidewalk in front of the McLaren School, in Chicago, upon which certain construction work was then in progress. During the trial of the cause South Shore Sheet Metal Works paid plaintiff $4,500, took a covenant not to sue and was dismissed from the case, which then proceeded against the City of Chicago as sole defendant and resulted in a verdict and judgment for $5,500, from which the city appeals.

The accident occurred at about 3:30 o'clock in the afternoon of October 6, 1937. Plaintiff was then just under 10 years of age. He was a student at the John McLaren grade school on the day of the accident. The school is located at the northwest corner of Laflin and Flournoy streets, Chicago. For several days prior to the accident the city, through a contractor, had been repairing the roof of the school. In the course of the repair work, asphalt shingles, slate and rubbish of various kinds accumulated on the grounds around the school and on the sidewalk in front of where the work was in progress. To guard against accidents due to the accumulation of rubbish a triangular area on the sidewalk in front of the school was roped off, the rope running from the fence to a "No Parking" sign about 18 inches from the curb, and then back again to the fence. Within this triangular area there was a considerable accumulation of debris from the roof, and some of the material had been permitted to accumulate on the outside of the rope, so that at the time of the accident shingles and other material were scattered over the sidewalk indiscriminately beyond the protected area. This pile of rubbish had been accumulating for several days.

After adjournment of school on the day of the accident plaintiff and four other boys were proceeding to the Y.M.C.A., which was in a northwesterly direction from the school. They first went to the home of another boy on the east side of Laflin street, then crossed over to the northwest corner of Laflin and Flournoy and started running west along Flournoy street, with plaintiff in the lead. He was proceeding on the outside of the sidewalk near the curb, with the intention of passing around the rope between the "No Parking" sign and the curb. Just before reaching the sign he tripped over one of the shingles lying scattered on the sidewalk outside the roped-off area, fell against the rope and was thrown down upon the iron base of the sign. This base was fastened to the sidewalk by a number of large bolts, one of which had been left projecting upward for a considerable distance. Plaintiff's head struck this bolt, and his skull was fractured, the end of the bolt being driven through both tables of the skull and into the brain substance. He was picked up, taken to his home, and after the wound was externally cleansed removed to the Cook county hospital, where the wound was sutured and antitetanus serum administered. He was thereafter removed to his home. His condition having failed to improve a physician was called and he was taken to the Garfield Park hospital the following day. X-rays showed a depressed skull fracture and an operation was decided upon. The surgeon who opened the skull removed the dirt, debris and bone fragments which extended through the dura mater into the brain tissue. The wound was sutured and a drain inserted. After about five months of discharge the wound healed. However, the bone substance did not grow again where it had been removed in the operation, leaving an area the size of a quarter where the brain is covered only by skin fascia. The pulsations of the brain can be readily seen through the opening and felt with the hand. Plaintiff wears a brace con-

tinuously to protect the brain. When he was finally able to return to school he was sent to the Spaulding school for crippled children and is transported to and from school in a bus. Physicians testified that the process of healing had gone as far as it ever can, and that no further bone growth may be expected. Since the accident plaintiff has exhibited many of the symptoms which physicians describe as being characteristic of a brain injury, namely, nervousness, headaches, difficulties with his eyes, restlessness in sleep, dizziness and inability to walk steadily. His doctor bill was $941, and his hospital expense $85.

It is urged, but not argued extensively, that plaintiff failed to prove negligence on the part of the city, and also that he should not be permitted to recover because he was guilty of negligence contributing to his own injury. Numerous witnesses testified pro and con to the circumstances under which the accident occurred, and these questions of fact were submitted to the jury under instructions which are not questioned. It was thus incumbent upon the jury to determine the city's liability, and we think the verdict is amply sustained by the evidence.

It is further urged that the verdict was grossly excessive, and that the amount of $4,500 which plaintiff received from the South Shore Sheet Metal Works for a covenant not to further prosecute his suit against it should be deducted from the amount awarded. We have already indicated the nature and extent of plaintiff's injury. It is reasonable to suppose that he will be required to travel through life with an opening in his skull, with the brain protected only by a skin fascia grown over the opening, and there is abundant evidence to show that although the wound healed, the usual complications from brain injuries were present up to the time of the trial and have seriously and perhaps permanently impaired plaintiff's health.

The principal ground urged for reversal is that the sum received by plaintiff from defendant who was dismissed under a covenant not to sue should have been deducted from the amount awarded by the jury. The record shows that after South Shore Sheet Metal Works had paid plaintiff $4,500 during the course of the trial and taken a covenant not to sue, the jury was advised of the circumstances by the court, under a stipulation which appears of record, as follows: ''The Court: It is agreed by the counsel that the reason of the dismissal of the suit was that on that morning the South Shore Sheet Metal Company in consideration given to it by the plaintiff of a covenant not to sue paid the plaintiff the sum of $4500. Now, then, the reason of that covenant not to sue rather than a plain dismissal or a plain release in that consideration is that under the law of this state there being two claimed joint tortfeasors or two wrongdoers, a release of one releases all, but a covenant not to sue does not release the other joint tortfeasor. The jury should be acquainted with the fact that during this trial a consideration of $4500 was paid by that defendant to the plaintiff.'' Defendant offered no instruction in connection with this settlement and none was given. Upon argument, however, defendant's counsel again called the jury's attention to the amount paid plaintiff by South Shore Sheet Metal Works, and advised them that defendant had been dismissed from the case, and argued as follows: ''When you take into consideration all of this evidence here in this case, and carefully consider it, take into consideration the payment of forty-five hundred dollars, dismissal of the suit against the other defendant, the contractor in this case who was repairing the roof of the school building, take all the facts and circumstances into consideration here, all that has occurred, . . .''

It thus appears that the subject of payment by the joint tort-feasor was brought into the case by defendant,

was fully explained by the court and argued to the jury by defendant, who urged it to give credit for the payment and suggested that the $4,500 paid was all that the injury was worth.

In regard to the liability of joint tort-feasors, the rule is well settled that each wrongdoer is responsible for the whole amount of damages, "and that there is no such thing as apportioning the damages among joint wrongdoers." (*Devaney v. Otis Elevator Co.*, 251 Ill. 28.)' In conformity with this rule the city is liable for the entire amount of damages sustained by plaintiff, and there can be no apportionment of these damages between the city and the joint tort-feasor who is no longer a party to the case. The procedure followed in this case was precisely the same as in the case of *Onyschuk v. A. Vincent Sons Co.*, 277 Ill. App. 414. That case was decided by this division of the Appellate Court, and the opinion was written by Mr. Justice GRIDLEY, who later presided at the trial of the case at bar. In that proceeding the evidence disclosed that plaintiff had received $1,200 on account of the suit from A. Vincent Sons Company, one of the defendants. The jury was advised of the payment and an instruction was offered charging the jury that the amount paid should be deducted from the verdict. This instruction was refused and we approved the ruling of the court. In affirming the judgment we pointed out that "there is nothing in the present record to suggest that the jury, in rendering its small verdict in plaintiff's favor . . . did not take into consideration said sum so received by plaintiff." In view of the stipulation of the parties in the case at bar, whereby the court informed the jury fully of the settlement made by South Shore Sheet Metal Works to plaintiff, the delivery of a covenant not to sue, with full explanation of its legal import, and the subsequent argument of defendant's counsel, wherein he requested the jury to take into consideration the amount paid plaintiff in arriving at its verdict, it would

be idle to argue that the jury was not fully apprised of the settlement or that it did not take into consideration the sum of $4,500 received by plaintiff. It is reasonable to suppose that the jury in awarding plaintiff the further sum of $5,500 intended this amount to be in addition to the $4,500 already received, and that it considered the injury sufficiently serious to warrant the additional amount.

The case was fairly tried, there is no complaint as to any instructions or the admission or refusal of evidence, and we find no convincing reason for reversal. The judgment of the superior court is affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.