[No. D010004. Fourth Dist., Div. One. Feb. 25, 1991.]

HENRY C. MAY, Plaintiff and Appellant, v.
JOSEPH C. MILLER et al., Defendants and Respondents.

**COUNSEL**

Estes & Hoyt, Joel C. Estes and Bernard M. Hansen for Plaintiff and Appellant.

Steven B. Weitzen, Horvitz & Levy, Peter Abrahams and Alison K. Greene for Defendants and Respondents.

**OPINION**

**NARES, J.**—Plaintiff and appellant Henry C. May, doing business as May Enterprises (May), sued his marine insurance company, Lloyds of London (Lloyds), in federal court for damages including his attorneys' fees, alleging causes of action for breach of contract, breach of fiduciary duty, bad faith and negligence relating to the stranding of his tuna boat. May settled with Lloyds for $115,000. May then proceeded to trial before a jury on his state action against his insurance brokers, defendants and respondents Joseph C. Miller, Betty S. Hamlin, William R. Hamlin & Associates, Inc. (Hamlins), and Leslie & Godwin, Ltd. (L & G), a participating and required English brokerage firm. The jury was informed of May's settlement with Lloyds, but no party requested the court instruct the jury to reduce or adjust its verdict if it found for May. Instead, May sought damages in excess of $232,170 for

all damages caused by the negligent handling of his insurance claim, including attorneys' fees of $90,000 incurred pursuing his claims against Lloyds, plus interest of approximately $60,000 on moneys May paid to repair his boat but which were subsequently reimbursed by Lloyds. The jury awarded May $77,466 against the Hamlins.[1]

The Hamlins moved for an order compelling an offset of the Lloyds settlement which the court granted, finding the Hamlins and Lloyds were joint tortfeasors under Code of Civil Procedure[2] section 877. The court reduced May's judgment to zero, and May timely appeals.

May contends (1) the Hamlins and Lloyds were not joint tortfeasors because one is the insurer and the other a broker; (2) even if Lloyds and the Hamlins were joint tortfeasors, the trial court erred in applying the offset because there was no evidence of any double recovery; and (3) the issue of setoff was tried to the jury, and it should be presumed the jury's damage award discounted the amount paid by Lloyds.

Section 877 requires judgments be reduced by amounts paid by settling tortfeasors "claimed to be liable for the same tort." May sought damages against the Hamlins for all the injury he sustained by the negligent handling of his insurance claims, despite having received $115,000 in settlement from Lloyds. Although May argues more than $91,000 of this settlement was for his remaining claims under the policy for damages to his boat, there was conflicting testimony on this issue presented at trial. Therefore, absent an instruction to the jury directing and requiring it to deduct the settlement proceeds, we conclude the trial court had discretion to grant the Hamlins' motion. Accordingly, we affirm.

## FACTS

In 1974 May built a fishing boat named "Her Grace." In 1979 "Her Grace" was insured through the Hamlins by Lloyds for hull and protection and indemnity insurance. "Her Grace" was underinsured, admittedly a business decision made by May. "Her Grace" was stranded off the coast of Baja California, and May commenced submitting demands for payments through his admiralty attorneys in Los Angeles to the Hamlins for processing by Lloyds. Disputes arose regarding these demands and after May threatened litigation, Lloyds retained its own attorneys.

---

[1] The jury's award of $1,394 against L & G is not before us.
[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

PROCEDURE

In April 1982, Lloyds filed a declaratory relief action against May in federal court, and May counterclaimed against Lloyds for breach of contract, breach of fiduciary duty, bad faith, negligence and attorneys' fees. May sought his attorneys' fees against Lloyds as an item of compensatory damages under *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] which holds an insured is entitled to recover attorneys' fees from its insurer as "damages" when an insurer compels the insured to retain an attorney to obtain benefits due under a policy. The theory is the insured is not made whole unless such fees are awarded. (See *Communale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883] citing Civ. Code, § 3300.) May repeated his entitlement to such fees during settlement negotiations and in his demands to Lloyds, citing and relying on *Brandt*. During this litigation May finally agreed to the retention of an adjustor. As of January 20, 1983, Lloyds had paid over $311,000 to May. However, the adjustor found Lloyds still owed May an additional $91,000 under the policy. Lloyds disputed the adjuster's findings, denying any further sums were due to May under the policy. May proposed a settlement offer to Lloyds in July 1985, seeking $145,000 in compensatory damages plus May's attorneys' fees incurred in processing his claim as well as in litigating the case. Lloyds rejected May's offer. Finally, in February 1987 May settled his case with Lloyds for $115,000. May gave Lloyds a general release which specifically excluded the Hamlins. There is no apportionment of this $115,000 in the release.

While the federal litigation was pending, May filed this state action on June 24, 1983, against the Hamlins and L & G. The complaint was never served. In October 1984, May filed and served a first amended complaint with causes of action for negligence, breach of oral contract, fraud and breach of fiduciary duty. This first amended complaint sought compensatory damages of $100,000 and punitive damages of $150,000. Although the first amended complaint was timely answered, it remained dormant and inactive until May filed an at-issue memorandum on April 30, 1987.

Jury trial commenced on November 28, 1988, and spanned a period of three weeks, during which the settlement with Lloyds was repeatedly disclosed and argued to the jury. At the close of May's case-in-chief the court granted motions barring the fraud cause of action and May's claims for punitive damages from the jury's consideration. However, the court denied the defendants' motion for nonsuit on May's remaining claims, mainly attorneys' fees incurred in obtaining benefits under the policy and through

litigation as well as interest on moneys May had paid before he was reimbursed by Lloyds.

In his closing argument May sought damages in excess of $170,000 plus interest of more than $61,000 from the Hamlins for all his damages caused by the negligent handling of his insurance claim. The majority of these damages were for May's attorneys' fees incurred against Lloyds. The jury returned a verdict against the Hamlins in the amount of $77,466, and against L & G in the sum of $1,394. On December 30, 1988, the Hamlins filed a motion under section 877 to set off the prior settlement. On January 19, 1989, the motion was orally argued and granted by the court, reducing the judgment against the Hamlins to zero. The trial court specifically found the Hamlins and Lloyds were joint tortfeasors.

May timely appeals.

## DISCUSSION

■ Section 877 provides in pertinent part:

"Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

"(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater."

The reduction of an award pursuant to this section is normally applied one of two ways: (1) by the jury after evidence is submitted to it of the settlement with instructions to reduce the award by the amount paid in settlement (*Helling* v. *Lew* (1972) 28 Cal.App.3d 434 [104 Cal.Rptr. 789]); or (2) by the court when the settlement is not presented to the jury (*Syverson* v. *Heitmann* (1985) 171 Cal.App.3d 106 [214 Cal.Rptr. 581]).

■ The trial court found the Hamlins and Lloyds were, in fact, joint tortfeasors, and there is substantial evidence in this record supporting that finding. It is irrelevant whether one was the insurance company and one a broker. The only relevant question in applying section 877 is whether there was one indivisible injury caused by two or more parties. May refers us to no evidence and our independent review of the record has found none

which demonstrates separate and distinct damages were demonstrated as the result of any actions by the Hamlins not encompassed by the acts of Lloyds. Thus, we conclude the court correctly found the Hamlins and Lloyds were joint tortfeasors for purposes of section 877.

■ Similarly, May's argument the jury's award would not result in a double recovery disregards the disputed testimony regarding the allocation of the $115,000 settlement proceeds. The trier of fact found against May on this issue. " 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362], quoting *Primm* v. *Primm* (1956) 46 Cal.2d 690, 693 [299 P.2d 231], italics in original.) ■ There is ample evidence in this record supporting the finding May sought a double recovery. First, he sought his attorneys' fees from both Lloyds and the Hamlins. Second, he sought interest on funds disbursed to creditors from both Lloyds and the Hamlins. Third, almost each and every one of the remaining de minimus damages May listed against the Hamlins had been previously sought from Lloyds.

In *Butler* v. *Ashworth* (1895) 110 Cal. 614, 618-619 [43 P. 4], the court stated the principle which still guides us today:

"It is a just and well-established doctrine that there shall be but one satisfaction accorded for the same wrong. If one be injured by a tortious act, he is entitled to compensation for the injury suffered, and, if several persons are guilty in common of the tort, the injured one has his right of action for damages against each and all of the joint tort-feasors, and may at his election sue them individually or together. But when the injury arises from a single act, he cannot, by suing each wrongdoer alone, convert a joint into a several [injury], and thereby secure more than one compensation for the same injury."

The amount of the compensation paid to an injured victim by one joint tortfeasor is deducted from the award obtained from another. (See *Laurenzi* v. *Vranizan* (1945) 25 Cal.2d 806 [155 P.2d 633].) The court did not err in finding May sought a double recovery for his injury.

■ Finally, there is no California case addressing the remaining issue presented by this appeal: a jury informed of the settlement but not instructed to reduce the award. May relies on two out-of-state cases in support of his contention the trial court could not grant the Hamlins' motion.

However, neither case supports May's position. In *Caruso* v. *City of Chicago* (1940) 305 Ill.App. 571 [27 N.E.2d 545], the court held a covenant not to sue did not have the effect of a release for purposes of offsetting the jury's award. Thus, *Caruso* is not on point. *Giem* v. *Williams* (1949) 215 Ark. 705 [222 S.W.2d 800] is on point and, contrary to the Hamlins' argument, it includes a discussion of an Arkansas legislative enactment which is almost identical to section 877.

In *Giem*, the appellate court upheld the trial court's denial of one joint tortfeasor's motion seeking to offset the jury's award in a wrongful death action of $8,950 by the $4,000 paid in settlement by another joint tortfeasor. In affirming, the appellate court specifically rejected appellant's argument the trial court had no discretion to deny the motion to offset under this almost identical code section and very similar factual situation. Thus, *Giem* supports our conclusion the question in this case is not whether the court has discretion to apply section 877, but rather whether it has abused its discretion.

Applying this test to the facts and record before us, we hold the trial court did not abuse its discretion in offsetting the prior settlement against the jury's award to May. May requested the jury be instructed in relevant part as follows:

"If under the court's instructions you find that the plaintiff is entitled to a verdict against the defendants, you must then award plaintiff damages in an amount that will reasonably compensate him for each of the following elements of claimed injury, damage, loss or harm, provided that you find that such harm or loss was, or will be, suffered by him and proximately caused by the act or omission upon which you base your finding of liability. [¶] The amount of such award shall be all [ ] proven damages."

May's contention we should presume the jury deducted the Lloyds settlement amount would require us to determine (1) the jury ignored the court's instructions and (2) absent an instruction, the jury knew and applied section 877 to the facts before it. Established precedent has repeatedly and uniformly rejected such presumptions. Therefore, we must assume the jury followed the court's instruction and did not know or apply section 877 in awarding May damages. (*Lind* v. *Closs* (1891) 88 Cal. 6 [25 P. 972]; *Smith* v. *Wemmer* (1963) 217 Cal.App.2d 226 [31 Cal.Rptr. 565].)

## DISPOSITION

The court's order offsetting the jury's award and modifying the judgment to May is affirmed. The Hamlins to recover costs on appeal.

Huffman, Acting P. J., and Froehlich, J., concurred.