Filed 3/14/22  Gossett v. Jackson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| RACHEL GOSSETT as Co-trustee, etc. et al., | E073838 |
| Petitioners and Respondents, | (Super.Ct.No. MCP1300789) |
| v. | OPINION |
| CHRISTOPHER ADAM JACKSON as Co-trustee, etc. et al., | |
| Objectors and Appellants. | |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge. As to Chapter Jackson, judgment affirmed; as to Christopher Adam Jackson, appeal dismissed, motion for sanctions granted, and remanded with directions.

Law Office of Angela Swan, and Angela Swan for Objectors and Appellants.

The Grossman Law Firm, Scott M. Grossman; Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Petitioners and Respondents.

The ongoing probate dispute that forms the basis of this appeal involves three siblings—Christopher Adam Jackson, Jordan Beswick, and Rachel Gossett—whose

1

mother passed away in 2013. Shortly after his mother died, Christopher petitioned the probate court to contest the validity of amendments she had made to The Jackson Family Trust (the trust), disinheriting Christopher. Beswick and Gossett (collectively, the Siblings) then petitioned the probate court to challenge the validity of asset transfers Christopher made from the trust after their mother passed away, including the transfer of a residential property to Christopher's former wife, Chapter Jackson, and the taking of money from two bank accounts belonging to the trust.[1]

In a prior appeal, we affirmed the trial court's granting of summary adjudication in favor of the Siblings on certain claims in their amended petition, including removing Christopher as co-trustee, imposing a constructive trust in favor of the trust on the residential property, and surcharging Christopher for the money taken from the two bank accounts. After the remittitur from that appeal issued, the trial court granted the Siblings' motion to file a second amended petition under Probate Code sections 850 and 17200 to include new allegations against Christopher and Chapter, which the Siblings filed along with supporting evidence.

The Siblings served Christopher and Chapter by mail with notice of the hearing on the second amended petition. Christopher and Chapter did not appear at the hearing on the petition, nor did any attorney representing them. They also did not file any response. The trial court granted the second amended petition, entered default against Christopher, and ordered a prove-up hearing as to Christopher. As to Chapter, the trial court entered

---

[1]      Because Christopher and Chapter have the same last names, we refer to them by their first names. No disrespect is intended.

default judgment, awarding damages as requested in the second amended petition. Christopher and Chapter both appealed from the default judgment entered against Chapter.

On appeal, Christopher and Chapter raise numerous issues. We dismiss Christopher's appeal because he has not demonstrated that he was aggrieved by the default judgment entered against Chapter. We grant the Siblings' motion for sanctions against Christopher and his attorney and remand to the trial court to determine the amount. We deny the Siblings' request to dismiss the appeal as to Chapter on the basis of the disentitlement doctrine. We reject all of Chapter's arguments on appeal because they lack merit or were forfeited. We accordingly affirm the judgment.

## BACKGROUND[2]

A. *The Siblings' First Amended Petition*

On December 23, 2013, the Siblings filed an amended petition in probate court under Probate Code sections 850 and 17200 against Christopher and Chapter, seeking to remove Christopher as co-trustee, to determine title to a residential property he had conveyed to Chapter, to recover trust property, and to recover money damages against Christopher based on money he allegedly took from two bank accounts belonging to the trust. The Siblings alleged that on November 6, 2013, Christopher had a $152,251.61

---

**2**      In her opening brief, Chapter makes various factual assertions that are not supported by citations to the record. We disregard such assertions. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [in a brief, any reference to a matter in the record must be supported "by a citation to the volume and page number of the record where the matter appear"].)

cashier's check issued to himself personally from a bank account at Wells Fargo Bank (Wells Fargo) held by the trust. They also alleged that on the same day, Christopher took over $80,000 from another bank account held by the trust at Mission Oaks Bank (Mission Oaks). The Siblings sought to surcharge Christopher for an amount to be determined at trial.

The Siblings moved for summary judgment or summary adjudication in the alternative, and the trial court partially granted the motion for summary adjudication. The court denied summary judgment because it concluded that factual issues remained as to whether the amendments to the trust were the invalid result of undue influence exerted over the Siblings' and Christopher's mother. Assuming the amendments were invalid, the court concluded that Christopher acted in excess of his authority as co-trustee by transferring the residential property to himself and then to Chapter and by distributing to himself $304,278.08 from the trust's bank accounts at Wells Fargo and Mission Oaks. A constructive trust was imposed on the real and personal property invalidly distributed from the trust until Christopher or Chapter returned the property to the interim trustee. Christopher was removed as co-trustee and surcharged $304,278.08 for the money taken from the bank accounts.

Chapter and Christopher appealed. In an unpublished opinion filed in April 2019, we affirmed the trial court's order granting summary adjudication against Christopher and Chapter. On June 27, 2019, the remittitur issued.

4

B. *The Siblings' Second Amended Petition*

In October 2018, while the prior appeal was pending, the Siblings moved to file a second amended petition. They argued that amendment was necessary to correct the previous pleading and to "plead new allegations supported by information obtained through discovery responses gathered by business records[,] deposition subpoenas, and litigation in [Christopher's] bankruptcy case, and the interim trustee's report in this case as recently as March 2018." The new information related to Christopher's and Chapter's taking and concealment of funds belonging to the trust, including from the bank accounts at Wells Fargo and Mission Oaks and a Mutual of Omaha life insurance policy. The Siblings also claimed that Christopher and Chapter used the life insurance proceeds to purchase real estate in another state, which was then transferred to Chapter.

Two weeks after the remittitur issued in the prior appeal, the trial court held a hearing on the motion to amend the petition. Chapter and Christopher did not appear, and no attorney appeared on behalf of either of them. The court granted the motion, and on July 11, 2019, the Siblings filed the second amended petition. The Siblings attached over 200 pages of supporting evidence to the petition.

In the second amended petition, the Siblings again alleged that on November 6, 2013, Christopher had a $152,251.61 cashier's check issued to himself personally from a Wells Fargo account held by the trust. The Siblings newly alleged that Christopher then transferred to Chapter $140,000 of proceeds from that account. The Siblings amended the allegation regarding the trust's account at Mission Oaks to claim that on

5

November 12, 2013, Christopher emptied the account of $152,026.47 and then transferred the money to himself and to Chapter. The Siblings also newly alleged that in January 2014, Mutual of Omaha, at Christopher's request, paid the trust approximately $225,000 on a life insurance policy for the Siblings' and Christopher's mother, which Christopher proceeded to distribute to accounts belonging to himself and Chapter. As to Chapter, the Siblings requested the following relief: (1) $140,158.31 plus interest for converting funds from the trust's account at Wells Fargo, (2) $94,441.80 plus interest for converting funds from the trust's account at Mission Oaks, (3) $120,105.57 plus interest for converting funds from the Mutual of Omaha life insurance policy, and (4) $709,094.74 in double damages.

On July 12, 2019, the Siblings served Chapter and Christopher by mail with the second amended petition and the notice of the hearing on that petition, which was set for August 13, 2019. The notice stated that any interested person could file a response, and it specified the amount of double damages that the Siblings sought to recover from Chapter.

At the hearing on the second amended petition on the scheduled date, neither Chapter nor Christopher nor any attorney representing either of them appeared. The Siblings' counsel represented that Chapter was not represented by an attorney. The Siblings' counsel acknowledged that some of the Siblings' requests for relief in the second amended petition were rendered moot by the prior appeal, stating "I don't get the same relief twice." The court granted the second amended petition and entered default against Christopher and Chapter. The court set a prove-up hearing as to Christopher in

6

December 2019. As to Chapter, the court directed the Siblings' counsel to prepare an appropriate judgment, which counsel had earlier stated was possible because of the specificity of the damages pled against Chapter.

On August 26, 2019, the court entered default judgment against Chapter on the second amended petition. The judgment provides that Chapter is liable to the Siblings, as co-trustees of the trust, in the amount of $1,063,800.42. In October 2019, Christopher and Chapter separately appealed from that judgment.

DISCUSSION

A. *Appellate Jurisdiction—Christopher*

The Siblings argue that we must dismiss Christopher's appeal. We agree.

In his notice of appeal, Christopher states that he is appealing from a default judgment entered on August 26, 2019. Christopher attached the default judgment entered against Chapter to his notice of appeal. The judgment provides that the Siblings, as co-trustees of the trust, can "recover judgment on the merits *against Chapter Jackson* [who] is liable in the amount" of over $1 million. (Italics added.)

In order to have standing to appeal, a party must be aggrieved by the judgment or order at issue. (Code Civ. Proc, § 902; *In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 53.) "One is considered, 'aggrieved' whose rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) The affected "interest '"must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."'" (*Ibid.*) An appellant lacks standing to raise issues

7

affecting only other parties. (*Six4Three, LLC v. Facebook, Inc.* (2020) 49 Cal.App.5th 109, 115; see also *Diamond Springs Lime Co. v. American River Constructors* (1971) 16 Cal.App.3d 581, 608 ["[A] defendant having independent liability has no standing to appeal from a judgment exonerating his codefendant, even where a potential right of contribution exists"].)

Christopher claims that he has standing to appeal from the default judgment because he "is an aggrieved party, and, any aggrieved party may appeal from an adverse judgment." Christopher does not support that conclusory assertion with any explanation of how his interests were injured by the judgment *against Chapter*, let alone how he was injured in an immediate, pecuniary, and substantial way. Given that the judgment by its terms was entered against Chapter alone, we do not perceive how the judgment aggrieved Christopher. On the contrary, given that the Siblings recovered damages against Chapter as a joint tortfeasor, the judgment against Chapter actually helps Christopher insofar as any amount of damages Chapter pays to satisfy the award for damages based on her liability as a joint tortfeasor would be deducted from the damages Christopher owes for the same wrongs. (See *May v. Miller* (1991) 228 Cal.App.3d 404, 410 (*May*).)

For all of these reasons, we conclude that Christopher does not have standing to appeal from the default judgment entered against Chapter. We accordingly dismiss Christopher's appeal.[3]

---

[3] We note that the Siblings did not frame the arguments in their motion to dismiss in terms of standing. Christopher did, however, address standing in his opposition to the Siblings' motion for sanctions. Because standing is jurisdictional (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295), we have no discretion to ignore the issue.

8

B. *Disentitlement Doctrine—Chapter*

The Siblings moved to dismiss Chapter's appeal on the basis of the disentitlement doctrine because in a related criminal case Chapter allegedly failed to pay any of the victim restitution that was ordered. We are not persuaded.

Under the disentitlement doctrine, we may dismiss an appeal if an appellant has failed to comply with a lower court order. (*Stoltenberg v. Ampton Investments, Inc.* (2013) 215 Cal.App.4th 1225, 1229; *MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) The Siblings contend that Chapter failed to comply with an order directing her to pay over $200,000 to the trust in victim restitution. The record does not support that argument. In 2016, Chapter pled guilty to one count of forgery (Pen. Code, § 470, subd. (c)) and to one count of grand theft (Pen. Code, § 487, subd. (a)) for taking "money belonging to the [trust] in an amount more than $950." After Chapter pled guilty, the trial court granted the prosecution's request to modify the terms of her probation to include an order to pay victim restitution to the trust. Chapter appealed from that order. The appellate division of the superior court reversed and remanded the matter to the trial court to allow Chapter to move to withdraw her plea and, if she did not, for the trial court to determine whether compelling and extraordinary reasons justified awarding "less than full victim restitution." The record does not include any information about what transpired on remand.

Given that the only order for victim restitution against Chapter in the record on this appeal was reversed, there is no basis for applying the disentitlement doctrine. We accordingly deny the Siblings' motion to dismiss Chapter's appeal on that basis.

C. *Personal Jurisdiction over Chapter*

Chapter argues that the judgment is void because the court did not have personal jurisdiction over her. She contends that the court lost personal jurisdiction over her after it allegedly issued a "final judgment" against her in 2016 when it granted the Siblings' motion for summary adjudication. Chapter claims that the trial court did not regain personal jurisdiction over her because the Siblings did not personally serve her with a new summons and the second amended petition. This argument fails for several reasons.

First, Chapter appealed from the 2016 order granting summary adjudication on the first amended petition. She does not provide any authority for the proposition that the court lost jurisdiction over her while she was actively pursuing an appeal. Second, in the prior appeal, we held that the court had personal jurisdiction over Chapter because she had generally appeared in the matter. The remittitur issued on June 27, 2019. According to the register of actions, no judgment against Chapter was entered between the issuance of the remittitur and the Siblings' filing of the second amended petition two weeks later. Chapter therefore remained a party to the probate proceeding. Thus, nothing has happened to affect our previous holding about personal jurisdiction, which therefore operates as the law of the case. (See *Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301 [explaining law of the case doctrine].) Third, because Chapter has generally

10

appeared in the probate proceeding, the Siblings were not required to serve Chapter personally with the amended pleading. (See *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 441 [mail service of an amended complaint "is sufficient where the defendant has made an appearance in the action"].)

For all of these reasons, we conclude that the trial court had personal jurisdiction over Chapter when it entered default judgment against her.

D. *Service of the Notice of Hearing—Chapter*

Chapter argues that the Siblings did not properly notify her of the hearing. She argues that mail service was not allowed by statute and that, if it was allowed, the 30 days' notice prescribed by Probate Code section 851 should have been extended by 10 days for mail service under Code of Civil Procedure section 1013. Both arguments fail.

Probate Code section 851 provides that at least 30 days before the hearing on a petition under section 850 of the Probate Code, the petitioner must serve all interested persons with notice of the hearing and a copy of the petition in the manner prescribed for service of a civil summons under Code of Civil Procedure section 413.10, et. seq. (Prob. Code, § 851, subd. (a).) Code of Civil Procedure section 413.20 provides: "If a summons is served by mail pursuant to this chapter, the provisions of [Code of Civil Procedure s]ection 1013 that extend the time for exercising a right or doing an act shall not extend any time specified in this title." We independently review issues of statutory construction and application of the law to undisputed facts. (*County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1616.)

11

On July 12, 2019, Chapter was served by mail with notice of the hearing on the Siblings' second amended petition, which was set for August 13, 2019. As Chapter acknowledges, this amounts to 32 days of notice. Chapter does not deny that service of the second amended petition was governed by Code of Civil Procedure section 413.10, et. seq. She nevertheless argues that Code of Civil Procedure section 1013 applies to extend service by mail. The argument fails as a matter of law because of Code of Civil Procedure section 413.20. Because Probate Code section 851 required a minimum of 30 days' notice by mail, and because the additional 10 days ordinarily required for service by mail is inapplicable pursuant to section 413.20 of the Code of Civil Procedure, we conclude that the 32-day notice afforded Chapter complied with the applicable statutes.

Chapter's claim that service by mail was not permissible also fails. To support her argument, she cites California Rules of Court, rule 7.53(a), which provides that in a probate matter "[a]n amended pleading or an amendment to a pleading requires the same notice of hearing (including publication) as the pleading it amends." But she does not explain how that rule prohibits service by mail. It does not. Service of a petition under Probate Code section 850 is governed by Code of Civil Procedure section 413.10 et seq. (Prob. Code, § 851, subd. (a)), and Code of Civil Procedure section 415.30, subdivision (a), provides for service by mail.

For all of these reasons, we reject Chapter's arguments that service by mail was improper and that the 30-day notice period was extended by 10 days.

12

E. *Sufficiency of the Notice of Hearing—Chapter*

Chapter also claims that the notice "failed to provide a statement advising any person interested in the property that he or she may file a response to the petition," which is statutorily required (Prob. Code, § 851, subd. (c)(3)). (Underlining omitted.) First, Chapter makes that argument in a single, conclusory sentence without providing any legal analysis or citing any legal authority or support in the record. The argument is therefore forfeited. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand*).) Second, the argument fails because the record refutes it. The notice includes this statement: "ANY PERSON INTERESTED IN THE PROPERTY MAY FILE A RESPONSE TO THE PETITION."

Without citing any authority, Chapter also seems to argue that the notice of hearing was insufficient because it did not include the total amount of damages sought by the Siblings and instead only notified her that the Siblings "were seeking a judgment against [her] for $709,094.74." This argument too is forfeited because it is not supported by any legal analysis or authority. (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.) In any event, the argument fails on the merits. The notice provides: "Double damages are sought against [Chapter] in the amount of $709,094.74." That complies with the statutory requirement that the notice include any amount of double damages sought under Probate Code section 859. The Siblings were not otherwise required to include in the notice the amount of any other monetary damages they sought to recover. (Prob. Code, § 851, subd. (c).)

F.  *Claim and Issue Preclusion—Chapter*

Chapter argues that the second amended petition is precluded in its entirety under the doctrines of claim preclusion and issue preclusion.  The arguments are forfeited.

"The preclusive effects of a prior judgment or similar adjudication—traditionally known as res judicata—are of two distinct kinds:"  (1) the narrow form of res judicata known as claim preclusion and (2) collateral estoppel, also known as issue preclusion.  (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 530; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.)  "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them."  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)  "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  Collateral estoppel, or issue preclusion, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."  (*Ibid.*)  Issue preclusion "applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  (*Id.* at p. 825.)  We independently review whether claim preclusion or issue preclusion applies.  (*Samar v. Matar* (2017) 8 Cal.App.5th 796, 803.)

Chapter fails to identify with any specificity the causes of action or issues that she believes were previously litigated. In her opening brief, Chapter identifies the causes of action in the first amended petition as: "Amended Petition to Determine Title to Real Property; Impose Constructive Trust; Cancel Instruments; Surcharge Co-Trustee; Double Damages; Remove Co-Trustee; and Suspend Co-Trustee, And Determine Construction of Trust. (Probate Code §§ 850 and 17200.)" (Underlining omitted.) She identifies the causes of action in the second amended petition as: "Second Amended Petition to Determine Title to Real Property; Impose Constructive Trust; Cancel Instruments; Surcharge Co-Trustee; Double Damages; Remove Co-Trustee; and Suspend Co-Trustee, Determine Construction of Trust; And Conversion. (Probate Code §§ 850 and 17200.)" (Underlining omitted.) Those are merely the titles from the caption pages of the respective pleadings, and they do not specify the claims brought against each party. Chapter does not list the specific claims brought in either pleading, nor does she identify the particular issues that she believes were necessarily litigated when the trial court granted partially summary adjudication on the first amended petition. Chapter's comparison of the titles from the caption pages of the pleadings sheds no light on whether the necessary elements for claim preclusion or issue preclusion are satisfied.[4]

---

[4] In her reply brief, Chapter does identify some specific issues or claims for damages that she alleges were decided in both the summary adjudication order and the default judgment. Because Chapter does not show good cause for having failed to raise those arguments in her opening brief, we decline to address them. (*Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2.) In addition, in Part G, *post*, we address Chapter's argument concerning double recovery.

Because Chapter has not adequately developed her arguments on claim preclusion and issue preclusion, we conclude that the arguments are forfeited.

G. *Double Recovery—Chapter*

Chapter argues that the default judgment against her is voidable because it permits the Siblings to recover doubly for the money taken from the trust's accounts at Wells Fargo and Mission Oaks. She contends that because the summary adjudication order surcharged Christopher for the money taken from those accounts, the Siblings cannot seek or recover damages against Chapter for the same money taken from the same accounts. The argument lacks merit.

The rule against double recovery prevents an injured party from recovering twice for the same injury by providing that any "amount of the compensation paid to an injured victim by one joint tortfeasor is deducted from the award obtained from another." (*May*, *supra*, 228 Cal.App.3d at p. 410.) "It is a just and well-established doctrine that there shall be but one satisfaction accorded for the same wrong. If one be injured by a tortious act, he is entitled to compensation for the injury suffered, and, if several persons are guilty in common of the tort, the injured one has his right of action for damages against each and all of the joint tort-feasors, and may at his election sue them individually or together. But when the injury arises from a single act, he cannot, by suing each wrongdoer alone, convert a joint into a several trespass, and thereby secure more than one compensation for the same injury. If he sue one alone, *and is paid damages for the wrong*, his remedy is at an end, and he is barred from further recovery against the others."

16

(*Butler v. Ashworth* (1895) 110 Cal. 614,618-619, italics added.) The rule against double recovery does not prevent an injured party from pursuing a claim of damages against a joint tortfeasor. (*Neubauer v. Goldfarb* (2003) 108 Cal.App.4th 47, 52 (*Neubauer*).)

Here, the Siblings obtained a damages award (which we affirmed) against Christopher for the money he took from the trust's accounts at Wells Fargo and Mission Oaks. The second amended petition added allegations against Chapter based on her liability for converting some of the funds from the same bank accounts. The Siblings were entitled to seek a damages award and obtain a judgment against Chapter as a joint tortfeasor for the same wrong. (*Neubauer*, *supra*, 108 Cal.App.4th at p. 52.) The prohibition against double recovery prevents the Siblings from collecting the full judgment against both Chapter and Christopher for the same injury. (*Ibid.*) But Chapter does not argue that Christopher in any way satisfied the order surcharging him for the money taken from the bank accounts.

We conclude that the judgment against Chapter for money taken from the same bank accounts based on her liability as a joint tortfeasor did not violate the rule against double recovery.[5]

---

[5] Chapter also claims that the $1,063,800.42 judgment against her exceeds the damages alleged in the second amended petition. Her claim is not supported by the record. The Siblings' second amended petition alleged damages of $140,158.31 for converting funds from the trust's account at Wells Fargo, $94,441.80 for converting funds from the trust's account at Mission Oaks, $120,105.57 for converting funds from the life insurance policy, and $709,094.74 in double damages. Those amounts add up to $1,063,800.42.

H. *Statute of Limitations—Chapter*

In her opening brief, Chapter claims that the Siblings' "pleadings for conversion are barred [by] statute of limitations and is the same claim for the same issues pled under a different theory of law." That conclusory assertion is not supported by any legal authority or analysis. We consequently consider the argument forfeited. (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

I. *Right to Jury Trial—Chapter*

Chapter argues that "[t]he void/voidable default Judgment entered by trial court would deny [her] rights to a trial by jury for the civil cause of action for conversion if the cause of action was allowable after final judgment." The argument fails.

There is no constitutional right to a jury trial in probate proceedings. (*Estate of Gardner* (1991) 1 Cal.App.4th 995, 999 (*Gardner*).) In addition, by statute there is no right to a jury trial in probate proceedings, subject to exceptions. (Prob. Code, § 825; *Estate of Beach* (1975) 15 Cal.3d 623, 642; *Gardner*, *supra*, at p. 999.) There is no exception for petitions under Probate Code section 850. (Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2021) ¶ 15.618.) But it is sometimes permissible to bring nonprobate civil claims, as to which jury trial rights might attach, in a probate case. (See Prob. Code, § 855.) Jury trial rights are forfeited if they are not timely asserted. (*Estate of Bell* (1943) 58 Cal.App.2d 333, 339.)

Chapter never requested a jury trial in the probate court. She consequently forfeited any jury trial rights that she may have had. (*Estate of Bell*, *supra*, 58

18

Cal.App.2d at p. 339.) Indeed, Chapter did not appear (either personally or through counsel) at the hearing on the Siblings' second amended petition, so it is not clear why she believes the court should have conducted a jury trial in her absence.

For all of these reasons, we conclude that the trial court did not violate Chapter's right to a jury trial by entering the default judgment against her.

J. *Sanctions Against Christopher and His Attorney*

The Siblings move for sanctions against Christopher and his attorney for pursuing a frivolous appeal. We grant the motion.

California Rules of Court, rule 8.276(a), gives us the authority to "impose sanctions" "on a party or an attorney for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay . . . ." Code of Civil Procedure section 907 likewise provides that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "The two standards are often used together, with one providing evidence of the other. Thus, the total lack of merit of an appeal is viewed as evidence that appellant must have intended it only for delay." (*Id.* at p. 649.)

19

We conclude that sanctions are warranted here because any reasonable attorney would agree that Christopher's appeal is totally and completely without merit. Christopher appealed from a default judgment entered against Chapter, which any reasonable attorney would know did not aggrieve Christopher. Christopher has failed to make any argument in his opening brief or his reply brief explaining how he has standing to appeal from the judgment entered against Chapter or how that judgment aggrieves him. It is only in his opposition to the Siblings' motion for sanctions that he claims that he was aggrieved. But he still fails to explain how the judgment against Chapter aggrieved him. In fact, as we have explained, the default judgment against Chapter actually benefits Christopher by making Chapter jointly liable for some of the amounts previously surcharged against Christopher in the summary adjudication ruling. Any reasonable attorney would agree that under these circumstances Christopher was not aggrieved by the default judgment entered against Chapter and therefore did not have standing to appeal.

We accordingly grant the motion for sanctions against Christopher and his attorney, Angela Swan. The trial court is directed on remand to calculate and to award to the Siblings reasonable attorney fees incurred in responding to the appeal by Christopher and in seeking appellate sanctions against him and Ms. Swan. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 521.) The sanctions award shall not include any attorney fees incurred in responding to (or moving to dismiss) Chapter's appeal.

20

## DISPOSITION

The default judgment against Chapter is affirmed. Christopher's appeal is dismissed. The Siblings shall recover their costs of appeal. As sanctions for pursuing a frivolous appeal, Christopher and his attorney, Angela Swan, shall pay to the Siblings the reasonable attorney fees they incurred in responding to Christopher's appeal and in seeking appellate sanctions, in an amount to be determined by the trial court on remand.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

MILLER
J.